723 So.2d 524 (1998)
CEG WELDING SUPPLY, INC., Plaintiff-Appellant,
v.
Robert O. MOORE, Defendant-Appellee.
No. 31,167-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 1998.
*525 S. Curtis Mitchell, Shreveport, for Appellant.
Laurie W. Lyons, Shreveport, for Appellee, Robert O. Moore.
Cynthia T. Batiste, Louisiana Department of Labor, Office of Employment Security, Baton Rouge, for Appellee, La. Department of Labor.
Before BROWN, STEWART, CARAWAY and PEATROSS, JJ., and PRICE, J. Pro Tem.
CARAWAY, J.
After being fired for failing a random drug test, Robert O. Moore was disqualified from state unemployment benefits by the Louisiana Department of Labor, Office of Employment Security ("OES"). Moore appealed this decision to an Administrative Law Judge ("ALJ") for the OES and following a hearing, the disqualification was reversed. CEG Welding Supply, Inc. ("CEG") now appeals, after the Louisiana Board of Review and the District Court of Caddo Parish affirmed the ALJ's decision. We reverse.

Facts
The plaintiff, Robert O. Moore, had worked for CEG as a truck driver since May 1994. Moore was advised by CEG that the company had a zero tolerance policy regarding drug use, and in 1994 he signed a pre-employment urinalysis notification. This notification form states that the Federal Motor Carrier Regulations, Section 391.103, require a driver of a motor carrier to be tested for the use of controlled substances. It also indicates that a positive drug test would disqualify Moore from operating a commercial vehicle for CEG.
On November, 19, 1996, a random drug test was performed on Moore by DRC Consultants, a firm hired by CEG to conduct the drug testing. A specimen was collected by an employee of DRC Consultants and sent to Corning Clinical Laboratory in Dallas, Texas. This lab is an NIDA (National Institute on Drug Abuse) certified laboratory as required by the Department of Transportation. At the lab, the specimen was subjected to an immunoassay test with a cut off level of fifty nanograms/ml for the presence of marijuana. The test returned a positive result for marijuana. There was no specific level of concentration of the drug specified, only that the sample was positive. A confirmation of the drug test was performed via gas chromatograph with a cut off level of fifteen nanograms/ml. The copy of the report was sent directly to the medical review officer, Dr. Jerry Poche, who verified the results. Moore was informed by Dr. Poche on November 22, 1996 that he had tested positive for marijuana, and he was later terminated for failing the drug test.
At the time of the notification Moore requested to be retested. However, he was told he would have to pay the $150 charge for the retest which he was unable to pay. Nevertheless, on December 2, 1996, Moore had his own test taken. This report was returned the next day with a negative reading for marijuana.
On December 13, 1996, the Shreveport Area Office of the Louisiana Department of Labor assessed a disqualification to Moore, effective November 22, 1996. Moore appealed this decision to the ALJ.
After an evidentiary hearing, the ALJ determined that CEG failed to bear the burden of proving that Moore was discharged for the use of illegal drugs under La. R.S. 23:1601(10). The ALJ stated "while the employer submitted documents indicating a positive reading, there was no evidence of any specific amounts." CEG appealed to the Louisiana Board of Review on January 21, 1997 which affirmed the ALJ's opinion. CEG next filed a petition for judicial review in the First Judicial District Court. The district court's judgment affirmed the Board of Review's decision, concluding that the record *526 showed that no competent person established, by personal knowledge, the chain of custody of the test results or the integrity thereof. The district court therefore concluded that there was an insufficient foundation as a matter of law for the introduction of the positive test. CEG now appeals and Moore and the Louisiana Department of Labor seek to affirm the ruling of the ALJ.

Law
La. R.S. 23:1601(10) provides that the employee will be disqualified from receiving unemployment benefits if he has been discharged for the use of illegal drugs. The statute provides that the employer may meet its burden of proof through evidence of the results of an employer-administered test performed in accordance with the requirements of the statute. The employer's drug test must be performed pursuant to a written and promulgated substance abuse policy.
The employer bears the burden of proving that the discharge resulted from disqualifying conduct. Banks v. Administrator of Dept. of Employment, 393 So.2d 696 (La. 1981). This issue is primarily factual and is left to the determination of the referee and the board of review. La. R.S. 23:1634. There must be legal and competent evidence to support the factual findings on which the administrative decision turns. Bean Dredging Corp. v. Administrator, Division of Employment Security, Department of Labor, 96-76 (La.App. 3d Cir.8/28/96), 679 So.2d 1019. In administrative hearings, however, the usual rules of evidence do not apply, and hearsay may be admissible "in accordance with regulations prescribed by the board of review." La. R.S. 23:1631; Gardere v. Brown, 170 So.2d 758 (La.App. 1st Cir.1964). Nevertheless, the jurisprudence recognizes that hearsay evidence is not competent to overcome an employee's direct, contradictory testimony. Credit v. Whitfield, 488 So.2d 1064 (La.App. 2d Cir.1986).
Judicial review in unemployment proceedings is limited by La. R.S. 23:1634(B). In the absence of fraud, the findings of fact by the board of review are conclusive if supported by sufficient evidence. Harris v. Administrator, La. Office of Employment, 480 So.2d 886 (La.App. 2d Cir.1985). The judicial review does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence, or substituting the views of this court for those of the board of review as to the correctness of facts. Id. at 888.

Discussion
The records of the OES reveal that in his initial OES interview Moore acknowledged CEG's written policy regarding drug abuse. He stated his position to the OES interviewer as follows:
"I was discharged by CEG on 11/22/96 for having a positive drug screen. I felt the test was in error, as I had not smoked marijuana in over 7 months. I explained that I used to smoke it on the weekends, but had quit a long time ago. I requested a re-test. This was not done so I had my own test done. It came back negative."
The OES's initial "Notice of Claim Determination" informed Moore that he had been disqualified for unemployment benefits, reciting a violation of Section 1601(10) for the use of illegal drugs. The notice further stated:
"You were discharged from your employment because you failed a drug test required by your employer pursuant to a written and promulgated policy. Your discharge was for misconduct connected with employment."
Moore's appeal of this initial determination entitled him to an evidentiary hearing before an ALJ. The notice sent to the parties by the OES included the following "Appeal Hearing Information" which set forth, in pertinent part, the following rules for the conduct of the hearing:
"APPEARANCE AT HEARING
In order to have their evidence considered by the Administrative Law Judge, the parties must appear in-person.... Only the specific issues shown on the hearing notice will be discussed during the hearing unless another issue arises during the hearing and both parties agree to discuss it and waive their right to prior written notification of the issue. If either party feels unprepared to discuss the new issue, the Administrative Law Judge will stop the *527 hearing and reschedule it, giving the parties written notice of the new issue. The Administrative Law Judge may, however, decide that the new issue is not relevant to the case or that it cannot be considered because the party that presented the issue did not raise it soon enough.
EVIDENCE
The parties should be prepared to present evidence at the hearing to support their case. Evidence includes sworn testimony by the parties and their witnesses as well as written statements and other documents related to the case.
WEIGHT OF EVIDENCE
The Administrative Law Judge will give more weight to certain evidence. The Administrative Law Judge has been trained on how to decide which evidence is more reliable. The sworn testimony given at the hearing by the parties and the witnesses will be given the most weight. Other evidence, such as hearsay testimony, ("The supervisor told me that John would not follow his instructions") and written statements, will not be given as much weight because the person who made the statement cannot be questioned to determine his sincerity or ability to perceive the event they spoke or wrote about. Documentary evidence will also be given more or less weight than the other evidence depending on how the Administrative Law Judge sees it.
SUBPOENAS
Witnesses who are reluctant to appear for the hearing officer or can't get off work can be subpoenaed by the Judge. * * * The parties can also request that documentary evidence be subpoenaed in the same manner.
EXHIBITS
Written documents which the parties wish to use to prove their case should be brought to the hearing (or mailed to the Judge, if it is a telephone hearing). In matters involving health, a Doctor's certificate should be brought (or mailed) to the Judge."
With those rules for proceeding, both parties appeared before the ALJ without legal counsel. Representing CEG were Bill Pierce, its general manager, and Robert Myers, a representative of DRC Consultants which conducted the drug test. The questioning was conducted primarily by the ALJ with each side allowed to cross-examine the witnesses.
The primary documentary evidence presented by CEG was a "federal drug testing custody and control form" (hereinafter the "Testing Form") prepared at the time that Moore's urine sample was taken and tested. The Testing Form contained: (i) the signature of Moore acknowledging that the specimen was taken on November 19 and sealed in his presence; (ii) the signatures of the employees with DRC Consultants and Corning Clinical Laboratories indicating their exchange of custody of the specimen; and (iii) the signature of Dr. Jerry Poche, the medical review officer. Dr. Poche certified as follows:
"I have reviewed the laboratory results for the specimen identified by this form in accordance with applicable Federal requirements. My determination/verification is: Positive. Remarks: Marijuana."
In addition to the Testing Form, Myers testified regarding the test procedure and the results of Moore's test, as follows:
JUDGE: How about the chain of custody, do y'all keep that record?
MYERS: Yes, sir. Chain of custody follows... DOT guidelines as well as the specimen being sent to a NIDA certified laboratory upon which the results were sent directly to a medical review officer both negatives and positives, at which time the medical review officer reviews everything and then contacts the employee on positives and inquires on why they would test positive for whatever drug it is or happens to be a prescription drug, the medical review officer will in turn contact the employee's physician and/or pharmacy to verify the legitimacy of that prescription. In Mr. Moore's case, his explanation to the medical review officer was that he disagreed with the test, but he did note request at the time for a retest of his specimen, either by the laboratory that originally conducted the analysis or by the *528 laboratory of his choice and the medical review officer always gives the individual that opportunity at the time that he talks to him over the phone.
JUDGE: Now, you said you know what the cut off level used is?
MYERS: Yes, sir. It's fifty nanograms on the screening test and fifteen nanograms on the confirmation test 60/ms.
JUDGE: Do you know what Mr. Moore's levels were?
MYERS: No sir. They don't normally list it which is an indication that they do [] all DOT's they don't list it [] what they do is, it's over the cut off levels so, therefore, it's a positive. It makes no difference what the level is as long as it's over the cut off level.
Based upon the foregoing procedure before the ALJ and the evidence, we find that CEG met its burden of proving that Moore was discharged from employment for the use of illegal drugs. The testimony of Myers and the certification of the medical review officer, Dr. Poche, were sufficient evidence that Moore tested positive for the use of marijuana and that the testing procedure for a "positive" classification required an immunoassay test to equal or exceed fifty nanograms/ml in accordance with La. R.S. 23:1601(10)(c)(v). The ALJ specifically found in his written ruling that the CEG's lab test utilized the fifty nanograms/ml cutoff, but then rejected Myers' explanation of the meaning of a "positive" test as though identification of a specific number above the fifty nanograms/ml level was an absolute necessity. There is no such requirement, and the only reading which can be given to Myers' testimony is that an excessive or positive level of marijuana was present in Moore's urine sample above the statutory level required in La. R.S. 23:1601(10)(c)(v).
Likewise, we are not impressed by the arguments by Moore and the Department of Labor discrediting entirely the Testing Form as a hearsay document. The ALJ made no such ruling, recognizing instead that "the employer submitted documents indicating a positive reading."
Hearsay evidence is permitted in the somewhat relaxed evidentiary setting of this administrative hearing. The rules of the OES quoted above invite the introduction of hearsay documents, including written statements from physicians and other witnesses. The Testing Form was a form apparently utilized for the federal drug testing procedures and was contemporaneously signed at the time of the November 1996 procedure by Moore, the parties who had custody of the urine sample, and the medical review officer, Dr. Poche.[1] The Testing Form was introduced by the employer as the business record memorializing the procedure for Moore's drug test. There was no contradictory testimony by Moore disputing the methodology employed for the test. Moore was the only witness in his defense. He could give no direct evidence disputing the procedure evidenced by the Testing Form because he had no personal knowledge of the process. His testimony did confirm that he discussed the results of the test with Dr. Poche and was advised of his failure of the test.
The Department of Labor now argues that hearsay "cannot be considered competent evidence and cannot be used in determining whether findings of the Board of Review are supported by `sufficient evidence' as required by statute." This is the equivalent of saying that hearsay is inadmissible, which is not the rule of the jurisprudence nor the rule of the OES as quoted above. In Credit v. Whitfield, supra, the employer's evidence of the employee's misconduct on the job was presented by two witnesses who only repeated what others had told them concerning the alleged misconduct of the employee. The employee's testimony regarding her action denied any misconduct. The employer's case, resting solely on admissible hearsay in the administrative proceeding, lost out to the direct, contradictory evidence presented by the employee. In this case, Moore presented *529 no contradictory evidence regarding the drug testing process or its result.
Finally, Moore's admission in these proceedings of his prior marijuana use is additional corroborating evidence of substance abuse. While Moore and the Department of Labor argue that such prior use, seven months before his drug test, is a separate issue, irrelevant to the pending charge, we think the admission has evidentiary significance regarding the probability of Moore's use of marijuana in November 1996. An inference can be drawn from Moore's prior violation of the law and the company policy that an additional violation likewise occurred immediately prior to the test. The admission, therefore, at a minimum, further bolsters the probability of the accuracy of the drug test while discrediting Moore's denial of drug abuse. While the admission alone appears to be an independent basis for the employer's proof of a Section 1601(10), "use of illegal drugs" violation, we need not rest our decision on that ground based upon the employer's proof of a positive drug test.

Conclusion
The ALJ recognized the evidence of the employer's drug test and the use of a fifty nanograms/ml cutoff on the immunoassay test in compliance with the statutory requirement. The ALJ's unsupportable conclusion that the further evidence of a positive test for marijuana was insufficient proof of a test result above the fifty nanograms/ml cutoff is error of law, misconstruing the sufficient evidence before the ALJ. Accordingly, the ruling of the ALJ is reversed. Costs of this appeal are assessed in accordance with La. R.S. 23:1692.
REVERSED.
STEWART, J., dissents with written reasons.
STEWART, J., dissenting.
CEG Welding Supply, Inc., ("CEG"), terminated Moore's employment on the basis of a positive drug test conducted in accordance with Department of Transportation ("DOT") guidelines. CEG then sought to disqualify Moore from receiving unemployment benefits on the basis of the positive drug test result. Moore successfully appealed his disqualification before an Administrative Law Judge ("ALJ"). The ALJ's reversal of Moore's disqualification was affirmed by both the Louisiana Board of Review and the First Judicial District Court.
Our review is limited by La. R.S. 23:1634(B) to questions of law. In the absence of fraud, the findings of fact by the board of review are conclusive if supported by sufficient evidence. La. R.S. 23:1634(B). Appellate review does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence, or substituting the views of this court for those of the board of review as to the correctness of the facts. Harris v. Administrator, Louisiana Office of Employment, 480 So.2d 886 (La.App. 2nd Cir.1985). While the majority acknowledges the limitations on the scope of appellate review, their reversal of the ALJ's ruling indicates practical disregard of these limitations. The majority impermissibly re-weighs and re-evaluates the evidence, draws inferences from Moore's admission of prior drug use, and substitutes their own views as to the correctness of the facts for those of the ALJ and board of review.
In concluding that CEG failed to prove by a preponderance of the evidence that Moore was discharged for misconduct connected with employment, the ALJ found that Moore was selected for a random drug test on November 19, 1996, at which time a specimen was collected. The ALJ further found that the drug test results returned on November 22, 1996, did not indicate a specific amount; however, the ALJ noted the testimony of Robert Myers indicating that the immunoassay test has a cutoff level of 50 ng/ml. The district court affirmed the ALJ's conclusion upon finding that no testimony established the chain of custody or the integrity of the test results. The district court was correct.
The majority's finding that CEG met its burden of proving that Moore was discharged from employment for the use of illegal drugs is largely based upon the testing form; the certification of Dr. Jerry Poche, the medical review officer, included on the testing form as verification of the positive *530 test results; and the testimony of Robert Myers, a representative of DRC Consultants, regarding chain of custody. The majority's reliance on this evidence is misplaced.
The majority refers to the introduction of the testing form into evidence as a business record memorializing the testing procedure. However, there is no testimony in the record supporting the admissibility of the testing form as a business record exception to the hearsay rule. The only testimony presented by CEG either regarding chain of custody, the customary business procedure, or the testing form was that of Myers. Myers testified that the chain of custody follows Department of Transportation ("DOT") guidelines; that the specimen is sent to a certified laboratory; that the results are sent to a medical review officer; and that the medical review officer contacts the employee regarding positive results. Myers did not provide any specific testimony regarding either the DOT guidelines, the testing procedure, internal safeguards used by the laboratory, or the testing of the specimen taken from Moore. Also, neither Myers nor any other witness testified as to whether the sample collection and testing was done in accordance with all of the conditions set forth in La. R.S. 23:1601(10)(c). In the absence of testimony verifying the testing form and the test results, these documents constitute hearsay and do not satisfy CEG's burden of proof in this matter.
Although hearsay is generally admissible in administrative hearings, hearsay evidence is not considered competent evidence and cannot be used to determine whether the factual findings of the administrative level are supported by sufficient evidence. Barber v. Administrator, Office of Employment Sec., 95-770 (La.App. 3rd Cir. 12/6/95), 664 So.2d 844; Credit v. Whitfield, 488 So.2d 1064 (La. App. 2nd Cir.1986). Furthermore, hearsay evidence is not competent to overcome an employee's direct, contradictory testimony. Alfred Lee Major v. Cintas/Red Stick, 94-713 (La.App. 3rd Cir. 12/6/95), 665 So.2d 153, review denied, 96-0081 (La.3/8/96), 669 So.2d 402; Credit v. Whitfield, supra.
Moore disputed the positive drug test results. Moore testified that he had not smoked marijuana at the time of the drug test and that he had not smoked any marijuana in over six months. Moore's testimony is direct, contradictory testimony to the positive test results offered by CEG as proof of misconduct to disqualify Moore from benefits. The test results and testing form, which both constitute hearsay evidence in this case, are not competent evidence upon which the majority can rely to reverse the ALJ's determination.
The burden was on CEG to prove by a preponderance of the evidence that Moore was discharged for use of illegal drugs. La. R.S. 23:1601(10). CEG did not meet this burden. La. R.S. 23:1601(10)(a) provides that only the results of drug testing done by an employer pursuant to a written and promulgated substance abuse policy established by the employer shall be considered admissible evidence. However, nothing in La. R.S. 23:1601 provides for the admissibility of such results as competent evidence when the employer fails to verify such results by presenting testimony of persons with sufficient knowledge of the testing at issue to establish the chain of custody. The majority states that Moore presented no direct evidence to dispute the testing procedure because he had no personal knowledge of the process. The majority overlooks the facts that the burden of proof was on CEG and that neither witness testifying on behalf of CEG had personal knowledge of the testing procedure or the test results.
Lastly, the DOT guidelines referred to by Myers provide that the laboratory shall have qualified personnel available to testify in administrative or disciplinary proceedings against an employee when based on positive urinalysis results reported by the laboratory. See 49 C.F.R. § 40.29(n)(5). This mandatory requirement suggests the need for testimony, by laboratory personnel, validating the authenticity of the results and the chain of custody. CEG presented no such testimony in this case.
For these reasons, I respectfully dissent.
NOTES
[1] The Testing Form and other evidence indicates that CEG was attempting to comply with the procedures outlined in the federal regulations for the U.S. Department of Transportation, and additionally, the use of an NIDA lab and medical hearing officer appears to be also in compliance with Louisiana drug testing procedures outlined in La. R.S. 49:1001, et seq.