930 So.2d 1108 (2006)
DELTA AMERICAN HEALTHCARE, INC., Plaintiff-Appellant
v.
Tory BURGESS and John Warner Smith, Secretary of Labor, Louisiana Department of Labor, Defendants-Appellees.
No. 41,108-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*1109 Cook, Yancey, King & Galloway, by Charles W. Penrod S. Price Barker, Shreveport, for Appellant.
Tory Burgess, in Proper Person.
Douglas E. Horner, Norbert C. Rayford, Baton Rouge, J. Jerome Burden, for Appellee, Louisiana Department of Labor Legal Division.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
The issue in this appeal is whether a claimant who was fired for sleeping on the job is disqualified from receiving unemployment benefits. Delta American Healthcare, Inc. ("Delta") appeals from a judgment of the trial court affirming the decision of the Louisiana Board of Review for the Office of Regulatory Services ("board of review") to allow the claimant, Tory Burgess, to receive unemployment benefits. Finding that the claimant is not disqualified under the circumstances of this case, we affirm the trial court's judgment.

FACTS
From October 2001 to July 2004, the claimant was employed by Delta at a group home for the physically and mentally disabled in Delhi, Louisiana. Earning minimum wage, he was a full-time "direct care" worker responsible for the physical care of the facility's residents. On July 15, 2004, the claimant was at work and on-duty. During this time, he was seen sleeping in a chair by other employees. The next day, Delta fired him for sleeping on the job.
Delta policy, like the applicable federal Medicare regulations, forbids direct care employees from sleeping on the job. Delta's policy provides:
Any employee of the facility may be subject to immediate dismissal, without notice or hearing, if the employee willfully engages in conduct which is detrimental to the welfare of the facility and/or the residents or employees. The following are examples of such conduct:
. . . .
S. Sleeping while on duty.
*1110 The claimant subsequently filed a claim for unemployment benefits; Delta opposed the claim on the grounds that it fired the claimant for misconduct relating to his employment. The Department of Labor agreed and rejected his claim for benefits. The claimant appealed, and the matter was tried before an administrative law judge on August 26, 2004. The claimant and two Delta representatives testified.
According to the claimant, he has taken prescription medicine, Clonidin, for his blood pressure for about two years. He said that he takes the medicine twice a day, once in the morning and once at night; he did not normally take the medicine while at work. Delta was evidently unaware of the claimant's condition or the fact that he took medication.
The claimant explained that as he worked on July 15, 2004, he had a headache, so he decided to take a dose of Clonidin. He did not ask to be relieved or to go home, which he could have done; he explained, "I'm not the type that just calls in every time that I've got a headache or a stomachache." He then gave his explanation for why he fell asleep:
I had nodded out after taking medication. I had, it was another lady working with me. Another direct care worker. And I told her that I wasn't feeling very well and I was going to sit down for a minute. And she said that was fine, go ahead. And I, because I told her, I said I just took my medicine because I had a bad headache. . . . And I was just going to sit down for a minute until things got better. She said okay. And at that time I just kind of nodded out. It probably wasn't even fifteen or twenty minutes.
When asked if the medicine had ever made him sleepy before, the claimant responded:
No, sir. Well, just normally, it, maybe at home, when I'm going to sleep. Because I normally take it at bedtime and when I wake up in the morning.
After hearing the witnesses, the judge decided that the claimant's conduct was employment-related misconduct and so affirmed the agency determination.
The claimant appealed that decision to the board of review. The five-member board, with two members dissenting, reversed the decisions below. It held that the claimant's behavior did not rise to the level of misconduct because he did not intentionally violate the "no sleeping" policy and did not expect the Clonidin to induce drowsiness.
Thereafter, Delta appealed the board's decision to the district court. It affirmed, holding that the board's decision was based on sufficient competent evidence and was correct as a matter of law. In its oral reasons for judgment, the trial court noted that "Apparently, this young man had not suffered prior writeups for behavior that would be disqualifying misconduct type behavior in the past," and that "because of the prior successful employment that this particular young man has enjoyed or had enjoyed with this employer, that was one of the deciding factors to me in this case. . . ." Delta now appeals that judgment to this court.

LAW
Appeals from district court judgments reviewing decisions of the board of review are governed by La. R.S. 23:1634, and proceed in the same manner as in other civil cases "but not inconsistent with the provisions of [Chapter 11 of Title 23]." The scope of judicial review by the courts is limited to questions of law and to the question of whether the decision is supported by "sufficient evidence." Bowman v. State, Office of Employment Security, 403 So.2d 825 (La.App. 2d Cir.1981). Specifically with regard to the district court, *1111 La. R.S. 23:1634(B) provides, in pertinent part:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file with the court such additional or modified findings and conclusions, together with a transcript of the additional record.
In Lafitte v. Rutherford House, Inc., 40,395 (La.App. 2d Cir.12/14/05), 917 So.2d 684, this court observed:
Based on this statutory provision, the jurisprudence has defined judicial review in cases such as this one as requiring a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. Judicial review does not permit the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts. [Citations omitted.]

INTENTIONAL OR NEGLIGENT ACT
Delta contends that the trial court erred by requiring a finding of an intentional act, rather than an act of mismanagement or neglect, to disqualify the claimant from unemployment benefits.
La. R.S. 23:1601 provides, in part:
An individual shall be disqualified for benefits:
. . . .
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.. . . [Emphasis added.]
The emphasized language was added to the statute by Acts 1990, No. 750. Prior to the addition of this language, the jurisprudence had fashioned the requirements of proving misconduct:
For a claimant to be disqualified from benefits because of "misconduct connected with his employment" under La. R.S. 23:1601(2), the "misconduct" must have resulted from willful or wanton disregard of the employer's interest, from a deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. . . . The type of behavior which is considered "willful misconduct" is intentional wrong behavior. . . . Because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification.
Charbonnet v. Gerace, 457 So.2d 676 (La. 1984), citations omitted. However, since the 1990 amendment, the jurisprudence in this circuit has continued to require that an employer prove misconduct by a showing of either intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard of the employer's interest. See, e.g., Lafitte v. Rutherford House, Inc., supra. Likewise, the other courts of appeal in this state have maintained the strict pre-amendment standard *1112 requiring proof of willful misconduct. See Lockett v. Forster, XXXX-XXXX (La.App. 4th Cir.6/23/04), 879 So.2d 323; St. Tammany Parish School Board v. State, Department of Labor, Office of Employment Security, XXXX-XXXX (La.App. 1st Cir.5/10/02), 818 So.2d 914; Harsco Corporation v. Victoria, XXXX-XXXX (La.App. 3d Cir.3/20/02), 812 So.2d 871; Taco Bell Corporation v. Perkins, 95-225 (La.App. 5th Cir.9/26/95), 662 So.2d 34; Gobert v. Louisiana Department of Employment Security, 94-1018 (La.App. 3d Cir.3/8/95), 651 So.2d 508. We also note that the Delta policy indicates that an employee is subject to dismissal when he "willfully engages in conduct which is detrimental to the welfare of the facility and/or the residents or employees," (emphasis added) including the "no sleeping" policy.
In light of the purpose of unemployment compensation, we conclude that the legislature's addition to La. R.S. 23:1601 was intended to be illustrative and was not intended to substantively change the law by deleting the requirement of proving deliberate misconduct. Thus, we hold that the trial court applied the appropriate standard of review.

DISQUALIFYING MISCONDUCT
In three other assignments of error, Delta argues that the trial court erred by finding that, as a matter of fact and law, the claimantby sleeping on the jobdid not intentionally engage in disqualifying misconduct under La. R.S. 23:1601. It also argues that the trial court erred by relying on his "prior successful employment" as a reason for finding that he did not engage in disqualifying misconduct, as that fact is nowhere in the record.
With regard to the trial court's consideration of the claimant's "prior successful employment," we observe that the record showed that the claimant had worked for Delta for more than two and one-half years and had taken Clonidin twice per day for approximately two years. This record contains no evidence that the claimant had been observed sleeping on the job prior to July 15, 2004. To that extent, the trial court's comments are in accord with the evidence in the record and we find no reversible error in its consideration of the little evidence that existed regarding the claimant's work record.
In Brandon v. Lockheed Martin Corp., XXXX-XXXX (La.App. 4th Cir.4/14/04), 872 So.2d 1232, the Fourth Circuit discussed four factors instructive in determining those instances where sleeping on the job amounts to disqualifying misconduct:
1. the nature of the employee's job responsibilities;
2. the location in which the employee was found sleeping;
3. the presence (or absence) of a written rule prohibiting sleeping on the job and prior warnings for sleeping on the job; and
4. any other aggravating or mitigating circumstances.
We find these illustrative factors to be useful and consider the claimant's conduct in light of them. First, the claimant was a direct care employee, responsible for the immediate needs of the residents of the Delta facility. Sleeping on the job in similar circumstances, without any mitigating factors, has been found to be disqualifying misconduct. Avery v. St. Patrick Hospital of Lake Charles, 551 So.2d 837 (La.App. 3d Cir.1989). The area where he fell asleep is not well-described in this record and it is not apparent whether this area is a public or private area of the facility. The claimant's conduct was plainly a violation of a Delta written rule prohibiting sleeping on the job, the willful violation of which was listed as justification for immediate termination.
*1113 However, the board and the district court both found that the mitigating circumstance of medication-induced drowsiness was sufficient to overcome the other factors in this case, and we agree. In other cases, mitigating circumstances have resulted in the claimant being allowed benefits. In Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3d Cir.1976), a nurse's aide was called in to work the night shift on her day off. Her act of falling asleep was found not to be disqualifying conduct for this employee of three and a half years. Similarly, in Brandon, supra, the court found that the employer failed to carry its burden of proving that the employee was intentionally napping on the job; rather, the court opined that, at worse, the claimant, an employee for 21 years, negligently took a nap due to a sinus headache. We contrast this with the Avery case where a registered nurse caring for more than a dozen seriously ill patients was disqualified for benefits after she was caught sleeping.[1] See also Allen v. Sumrall, 398 So.2d 108 (La.App. 3d Cir.1981), where the employee was an Attendant I charged with observing patients who was disqualified for his second offense of sleeping on the job.
In the instant case, the claimant attributed his drowsiness to his ingestion of Clonidin and stated that the medication had not made him sleepy in the past except perhaps at bedtime. In the absence of proof that the claimant knew that the medication would make him sleepy, the employer failed to prove that his conduct was willful or intentional to the degree necessary to disqualify him from unemployment benefits. The evidence did not reveal any aggravating factors or evidence that he meant to fall asleep. The evidence tends to show that the claimant's nap was neither intentional nor willful, so he is not disqualified from receiving unemployment benefits.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed to the appellant.
AFFIRMED.
NOTES
[1] While the claimant in Avery, supra, was a registered nurse, the claimant in the instant case is an unskilled, minimum wage earner.