SEXTON, J.
| Claimant, Lenzy Jackson, appeals from a judgment affirming the denial of his *329 demand for unemployment compensation benefits. For the reasons stated herein, we affirm.

FACTS

Mr. Jackson was employed as a maintenance man by the Wyatt Manor Nursing Home in Winnfield. When hired, he signed the facility’s drug and alcohol policy, which provided, in part, that the use, sale, transfer or possession of drugs was strictly prohibited. He was fired on October 27, 2005, due to circumstances related to a violation of the drug policy and, thereafter, sought unemployment benefits. The Louisiana Department of Labor (“LDOL”), Office of Employment Security, initially determined that Mr. Jackson was qualified to receive benefits, but Wyatt Manor appealed that decision to the LDOL Board of Review (“the Board”) urging that Mr. Jackson was fired for misconduct.
On January 10, 2006, the Board held a hearing and heard testimony from Mr. Jackson and from a representative of Wyatt Manor, Pam Masters. Ms. Masters was the administrator of Wyatt Manor and was Mr. Jackson’s supervisor. Through Ms. Masters, Wyatt Manor introduced an “Employee Counseling Form” created by Wyatt Manor on the day Mr. Jackson was discharged. The form provides:
PROBLEM: Investigation of illegal substances in the building and being given to residents by ah employee. Employee had knowledge of this dealing and did not report it to administration.
STATEMENT BY EMPLOYEE: Resident asks employee about where he could get some “joints.” Employee states he 12told resident where he could get some from another employee. “He aske (sic) me for some drug, (sic)”
RESOLUTION OF PROBLEM OR ACTION TAKEN: Reviewed company policies with employee. Explained the knowledge of drug dealing within the building is not tolerated and is a violation of company policies. Employee was counseled that the administrator of the building should have been notified immediately. Employee terminated for violation of company policy.
Mr. Jackson’s apparent involvement in a scheme to furnish marijuana to a Wyatt Manor resident and his failure to notify his employer of the situation was, thus, the cause of his termination.
The hearing was conducted informally, with both Mr. Jackson and Ms. Masters engaging in a colloquy with the administrative law judge. The judge heard the testimony of both parties, and each witness’ testimony included hearsay concerning the selling of drugs in the facility by employees. The details of the drug selling scheme cannot be determined with any accuracy, but the employer alleges that Mr. Jackson and his sister-in-law, also a Wyatt Manor employee, worked together to sell marijuana to a Wyatt Manor resident. Wyatt Manor fired both Mr. Jackson and his sister-in-law as a result of the incident. In his testimony, Mr. Jackson placed most of the blame for the scheme on his sister-in-law and denied knowing that she was selling drugs. Mr. Jackson admitted, however, that he had knowledge of the resident’s desire for drugs and that he (Mr. Jackson) had advised the resident that he may know where the resident could get the drugs. Mr. Jackson engaged in the following exchange with the administrative law judge:
| aJudge: It [the employee counseling form] said “He asked me for some drugs.” (Sic.)
Jackson: (Inaudible)
*330 Judge: And you told him where he could get some?
Jackson: I told him where he might.
Mr. Jackson admitted talking to his sister-in-law about his conversation with the resident, but then repeated that his sister-in-law was actually responsible for bringing the drugs into the facility and selling them to the resident. Despite admitting that he told the resident “where he might” obtain drugs, Mr. Jackson denied that he told the resident that his sister-in-law was the person who the resident should talk to about the drugs. Mr. Jackson did not report the incident to anyone at Wyatt Manor.
On January 11, 2006, the administrative law judge reversed the initial decision of the LDOL, stating in part:
The testimony and evidence in this case indicate the claimant ... was terminated from his employment after he was involved in a transaction involving the selling of marijuana to a resident. His actions demonstrate a standard of behavior beyond what an employer has the right to expect of an employee and a deliberate disregard of their rules. His discharge was for misconduct connected with the employment.
Mr. Jackson appealed this decision to the LDOL Board of Review, and the Board affirmed the decision on March 3, 2006. Mr. Jackson appealed that decision to the district court, and a hearing was held on June 12, 2006, to consider the case. The parties submitted the case on memoranda and the district court charged itself with the appropriate law concerning the standard of review under La. R.S. 23:1634(B) and concluded that the Board’s findings were supported by sufficient evidence and were correct as a matter | ¿of law. Accordingly, the district court affirmed the Board’s decision and Mr. Jackson now appeals.

DISCUSSION

La. R.S. 23:1601(2) provides, in part:
An individual shall be disqualified for benefits:
[[Image here]]
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
The employer bears the burden of proving that the discharge resulted from disqualifying conduct. Banks v. Administrator of Dept. of Employment, 393 So.2d 696 (La.1981). The scope of judicial review by the courts is limited to questions of law and to the question of whether the decision is supported by “sufficient evidence.” Delta American Healthcare, Inc. v. Burgess, 41,108 (La.App.2d Cir.5/17/06), 930 So.2d 1108; Bowman v. State, Office of Employment Security, 403 So.2d 825 (La.App. 2d Cir.1981). Specifically, with regard to the district court, La. R.S. 23:1634(B) provides, in pertinent part:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file with the *331 court such additional or modified findings and conclusions, together with a transcript of the additional record.
5In Lafitte v. Rutherford House, Inc., 40,395 (La.App.2d Cir.12/14/05), 917 So.2d 684, this court observed:
Based on this statutory provision, the jurisprudence has defined judicial review in cases such as this one as requiring a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. Judicial review does not permit the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts. [Citations omitted.]
See also Delta American, supra.
On appeal, Mr. Jackson argues that the decisions of the lower courts were based largely on hearsay evidence and, in particular, upon statements made by his sister-in-law in the course of the Wyatt Manor investigation and at her hearing before the administrative law judge. Mr. Jackson argues that this evidence was not competent to form the basis of a decision disqualifying him from benefits.
In administrative hearings, the usual rules of evidence do not apply and hearsay may be admissible in accordance with regulations prescribed by the Board. La. R.S. 23:1631; CEG Welding Supply, Inc. v. Moore, 31,167 (La.App.2d Cir.12/14/98), 723 So.2d 524. La. R.S. 23:1631 provides, in part:
The manner in which appealed claims shall be presented and the conduct of hearings and appeals shall be in accordance with regulations prescribed by the board of review for determining the rights of the parties, whether or not such regulations conform to the usual rules of evidence and other technical rules of procedure.
|fiThe jurisprudence recognizes, however, that hearsay evidence is not competent to overcome an employee’s direct, contradictory testimony. Credit v. Whitfield, 488 So.2d 1064 (La.App. 2d Cir.1986).
Review of the lower court’s rulings indicates that the administrative law judge heard and considered testimony given at Mr. Jackson’s sister-in-law’s unemployment hearing, which implicated Mr. Jackson in the procuring and selling of the marijauna at Wyatt Manor.[1] Mr. Jackson denied that he was involved in the actual transaction. Alone, the hearsay evidence consisting of statements made by the sister-in-law would not be sufficient competent evidence to support the administrative law judge’s conclusion that Mr. Jackson had engaged in misconduct justifying termination under La. R.S. 1601(2). Mr. Jackson, however, admitted at the hearing that he told a Wyatt Manor resident “where” the resident might obtain drugs and it is undisputed that Mr. Jackson did not report this incident to Wyatt Manor. In addition, while we do not know the specifics of the conversation, Mr. Jackson admitted that he spoke with his sister-in-law about the resident’s request. The hearsay evidence in this case simply corroborated Mr. Jackson’s own admissions.
The facilitation of the sale of mari- ■ juana is misconduct; it is a violation of *332 law. Even if not characterized as facilitation of the sale of drugs, we conclude that advising a resident that he may know where drugs |7can be obtained, telling his sister-in-law that the resident wanted drugs and then failing to inform the employer of the drug-related activity at the workplace collectively constitutes misconduct under the statute. Specifically, such actions are dishonest and constitute wrongdoing and are violations of Wyatt Manor’s policies. We find that the record in the case sub judice contains sufficient competent evidence to support Mr. Jackson’s discharge for misconduct and, thus, the denial of unemployment benefits.

CONCLUSION

Since we find that the decisions of the lower courts were based on sufficient competent evidence and justify the action taken as a matter of law, we affirm the judgment of the district court at Appellant’s, Lenzy Jackson, cost.
AFFIRMED.

. In the opinion section of the written decision, the administrative law judge indicates his finding that Mr. Jackson was terminated “after he was involved in a transaction involving the selling of marijuana to a resident.” During the hearing, the administrative law judge advised Mr. Jackson that his sister-in-law had testified in her hearing (over which he presided) that Mr. Jackson had "set her up” by advising her that the residents wanted drugs.