DREW, J.
 

 hThe question in this appeal is whether Cynthia C. Johnson should receive unemployment benefits.
 

 Dykes Oil Company appeals a district court judgment which ruled that Johnson was entitled to unemployment benefits. The Louisiana Workforce Commission has also filed a brief seeking reversal.
 

 The district court held that even though the Board of Review for Office of Regulatory Services made a factual finding that any misconduct by Johnson was unintentional, and thus not aggravated, it nonetheless issued a ruling upholding the hearing officer’s ruling of disqualification for benefits. We agree with the district court that the facts found do not support a denial of benefits.
 

 FACTS
 

 In late 2007, Cynthia C. Johnson was hired by Dykes Oil (“the company”) as an office administrator. Her direct supervisor was Kathy Dykes (“Dykes”), co-owner of the company. Johnson’s duties included reviewing weekly payroll spreadsheets prepared by Larry Meshell, the company’s bookkeeper. After checking the data,
 
 *420
 
 Johnson would meet with Dykes, who would approve the payroll, signing checks for those employees not utilizing direct deposit.
 

 Another of Johnson’s duties was to provide orientation for new hires. Part of the orientation process included Johnson explaining the company’s vacation policy, which was that full-time employees only became eligible for paid vacation time (one week) after one year of employment.
 

 li>After working for the company about seven months, Johnson approached Dykes about taking unpaid vacation during May of 2008.
 

 Johnson urges that Dykes approved compensation for the vacation time, an exception to company policy, in order to compensate Johnson for her extra work hours. Similar exceptions had been granted for employees in the past, according to Greg Dykes (“Greg”), the company’s Operations Manager. Kathy Dykes testified that she approved Johnson’s vacation time on an unpaid basis, in accordance with company policy.
 

 Even though Meshell knew that Johnson had been on vacation, he nonetheless provided the paperwork that paid for her vacation time.
 

 Johnson noted that her time off was listed on the spreadsheet to be paid vacation, which apparently comported with her understanding. Accordingly, Johnson made no changes to the payroll spreadsheet and presented it to Dykes, who signed off on the payroll without a close review.
 
 [1]
 

 When reviewing her business records at a later time, Dykes:
 

 • discovered Johnson had been paid for her vacation time;
 

 • directed Johnson to speak with Meshell and Greg;
 

 • never spoke with Johnson until her termination on June 2; and
 

 • filled Johnson’s position with a relative.
 

 Johnson applied to the Louisiana Workforce Commission for unemployment benefits.
 

 She was notified by the commission on September 16, 2008, that she was disqualified from receiving benefits because she had been fired for [¡¡misconduct. Her earned wage credits for unemployment insurance were not cancelled because her misconduct was not considered to be “aggravated.”
 

 Johnson appealed the commission’s decision to an Administrative Law Judge (“ALJ”), before whom a hearing was held in late 2008. Testimony was taken from Johnson, Dykes, Greg, and Meshell.
 

 The ALJ found that Johnson:
 

 • had been approved for an unpaid vacation;
 

 • had been fired for approving her own paid vacation without approval from her supervisor;
 

 • deliberately disregarded the interest of the company;
 

 • engaged in aggravated misconduct;
 

 • was not qualified to receive unemployment benefits; and
 

 • was not even entitled to earned wage credits.
 

 Johnson then appealed the ALJ’s ruling to the Board of Review for Office of Regulatory Services.
 

 In an early 2009 decision, the Board found that:
 

 • Johnson was aware that she was ineligible for paid vacation time;
 

 
 *421
 
 • she approved a paid vacation for herself because she believed her supervisor made an exception for her;
 

 • she was fired for misconduct that was not aggravated because she only took wages to which she thought she was entitled; and
 

 • her disqualification was affirmed, but her wage credits were restored.
 

 Johnson appealed to the 42nd Judicial District Court, which thoroughly reviewed all of the administrative proceedings, holding that:
 

 • the Board of Review, having found no intentional misconduct, erred as a matter of law in nonetheless affirming the denial of benefits; and
 

 14* Johnson was entitled to unemployment benefits and wage credits.
 

 We must resolve two related issues: First, did the district court err in interpreting the Board’s ruling as finding that Johnson had not committed disqualifying misconduct? Second, did the company prove that Johnson had committed such misconduct?
 

 Dykes argues that the answer to each question is “yes” and therefore the decision of the district court should be reversed and the decision of the Board of Review reinstated. Johnson wants the benefits to which she feels she is entitled. She wins, at least in this court.
 

 DISCUSSION
 

 According to La. R.S. 23:1601(2)(a), employees are disqualified from receiving unemployment benefits if they are fired for committing misconduct in the course of employment. Employers bear the burden of proving that an employee was fired due to misconduct.
 
 Banks v. Administrator of the Dept. of Employment Security of the State of Louisiana,
 
 393 So.2d 696 (La.1981). Jurisprudence in this circuit
 
 [2]
 
 requires that an employer trying to prove misconduct show
 
 either
 
 intentional conduct or negligence that amounts to culpability
 
 or
 
 an intentional and substantial disregard for the interest of the employer by the ^employee.
 
 Delta American Healthcare, Inc. v. Burgess,
 
 41,108 (La.App.2d Cir.5/17/06), 930 So.2d 1108;
 
 Lafitte v. Rutherford House, Inc.,
 
 40,395 (La.App.2d Cir.12/14/05), 917 So.2d 684.
 

 The decision of a board of review is subject to judicial review. La. R.S. 23:1634. Factual findings of the board are conclusive as long as they are supported by sufficient evidence. La. R.S. 23:1634(B); see
 
 Jackson v. Louisiana Board of Review,
 
 41,862 (La.App.2d Cir. 1/10/07), 948 So.2d 327. The board’s factual findings with respect to misconduct must satisfy a “threshold test of reasonableness.”
 
 Banks,
 
 393 So.2d at 699. Assuming there is sufficient evidence supporting the findings of fact, judicial review is limited to whether the facts, as a matter
 
 *422
 
 of law, support the board’s decision.
 
 Lafitte, supra.
 

 The board of review found these facts to have been established:
 

 • Johnson knew the company’s policies;
 

 • she knew she was not strictly entitled to a paid vacation, yet she approved the payroll spreadsheet granting herself this benefit;
 

 • she was under the mistaken impression that Dykes had made an exception to the company policy on this issue; and
 

 • the evidence did not establish any intent by Johnson to take company money to which she was not entitled. zled money and then falsified and destroyed company records whereas Johnson presented the payroll to Dykes without making any changes;
 

 The evidence supports the board’s findings of fact as reasonable. That being so, its legal conclusion is clearly wrong. In other words, despite finding Johnson had no intent to do wrong, the board affirmed the ALJ’s denial of benefits because of Johnson’s misconduct. This cannot be. The facts as found by the board cannot justify its own legal conclusion. There [¿was also no specific finding of such culpable negligence as would require disqualification for benefits.
 

 The district court correctly reversed the board’s decision, pointing out that this Circuit has consistently held that a claimant can be disqualified from receiving unemployment benefits only for either intentional wrongdoing or negligence that shows intentional and substantial disregard for the employer’s interests.
 
 See Delta American Healthcare, supra.
 

 The cases cited by the company are easily distinguishable:
 

 • In
 
 Vandike v. Brown,
 
 139 So.2d 803 (La.App. 3d Cir.1962), a deliveryman embez-
 

 • In
 
 Pope v. Whitfield,
 
 524 So.2d 108 (La.App. 4th Cir.1988), a hotel housekeeper made incorrect entries on time cards, either willfully or accidentally; here, paperwork was prepared by Meshell and presented by Johnson to Dykes, who approved the payments;
 
 [3]
 

 • In
 
 Roberts v. Office of Employment Sec.,
 
 502 So.2d 244 (La.App. 3d Cir.1987), a credit union teller took $20 from her teller box for personal use with intent to return it; here, Johnson was mistakenly paid by direct deposit for vacation time.
 

 Johnson is entitled to unemployment benefits and wage credits. The district court was correct in so ruling.
 

 DECREE
 

 At Dykes Oil Company’s costs, the judgment of the district court is AFFIRMED.
 

 [1]
 

 . Dykes testified that she was in a hurry that day and made only a cursory check of the spreadsheet, on which Johnson was plainly listed as receiving a paid vacation.
 

 [2]
 

 . The "misconduct” statute, La. R.S. 23:1601(2)(a), which was amended in 1990, defines misconduct in a more general sense. The Second, Third, Fourth, and Fifth Circuit Courts of Appeal all continue to apply the "intentional” standard described herein.
 
 See Delta American Healthcare, Inc. v. Burgess,
 
 41,108 (La.App.2d Cir.5/17/06), 930 So.2d 1108;
 
 Harsco Corp. v. Victoria,
 
 2001-1486 (La.App. 3d Cir.3/20/02), 812 So.2d 871;
 
 Emke v. Mouton,
 
 617 So.2d 31 (La.App. 4th Cir.1993);
 
 Taco Bell Corp. v. Perkins,
 
 95-225 (La.App. 5th Cir.9/26/95), 662 So.2d 34. The First Circuit initially continued to apply the pre-amendment standard but recently held “misconduct” no longer requires a showing of intentional or wanton conduct and that La. R.S. 23:1601(2)(a) should "be applied as written.”
 
 Fontenet v. Cypress Bayou Casino,
 
 2006-0300, p. 7 (La.App. 1st Cir.6/8/07), 964 So.2d 1035, 1040.
 

 [3]
 

 . Dykes should have exercised her fiduciary obligation to the company by carefully checking over the payroll records. In addition, when Dykes discovered what she felt was an overpayment, she should have confronted Johnson directly, rather than tasking other employees to do so. After all, only Dykes and Johnson were privy to their conversation about the paid or unpaid nature of the vacation.