818 So.2d 914 (2002)
ST. TAMMANY PARISH SCHOOL BOARD
v.
STATE of Louisiana DEPARTMENT OF LABOR, OFFICE OF EMPLOYMENT SECURITY and Hazel Hearty
No. 2001CA0757.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*915 Harry P. Pastuszek, Jr., David S. Pittman, Lynn Carnevale Gilreath, Mandeville, Counsel for Plaintiff/Appellant St. Tammany Parish School Board.
J. Jerome Burden, Baton Rouge, Counsel for Defendant/Appellee Louisiana Department of Labor, Office of Employment Security.
Before: CARTER, C.J., PARRO and CLAIBORNE,[1] JJ.
IAN W. CLAIBORNE, Judge Pro Tem.
This is an unemployment compensation case. The St. Tammany Parish School Board (employer) appeals the judgment of the district court upholding the decisions of the Board of Review (Review Board) and Administrative Law Judge (ALJ) finding no misconduct connected with Hazel Hearty's (claimant's) employment. Based on the following review, we affirm.

FACTS AND PROCEDURAL HISTORY
After a three-day tenure hearing before the employer, on March 24, 2000, the claimant was terminated from her employment as a sixth-grade language arts teacher at Carolyn Park Middle School in Slidell, Louisiana. The employer unanimously voted to terminate the employment of claimant for her incompetence (failure/refusal to follow the Louisiana Components of Effective Teaching and teaching incorrect information) and for willful neglect of duty (failure, refusal, and inability or unwillingness to correct teaching deficiencies and a combative/confrontational attitude).[2] The claimant did not *916 appeal her employer's decision to terminate; instead, she filed a claim for unemployment compensation on April 9, 2000.
The Louisiana Department of Labor, Office of Employment Security (agency) initially determined that there was no misconduct connected with the claimant's employment and found her eligible for unemployment compensation benefits. The employer appealed that determination to an ALJ. The ALJ conducted a hearing to consider the issues of whether the claimant was discharged from her employment because of poor work performance, incompetence and/or willful neglect of duty. At that hearing only the claimant, the principal of Carolyn Park Middle School and the assistant personnel director for the employer testified. The ALJ made the following findings of fact:
The claimant worked for the employer for eight years and five months until she was terminated by the St. Tammany Parish School Board on March 24, 2000. She last worked as a sixth grade teacher of language arts at Carolyn Park Middle School. For the last three years of her employment, she had been under the supervision of Gwen Doyle, principal. The claimant had been evaluated by the previous principals; and a formal evaluation was issued on May 9, 1997, in which it was noted that she "performs job description items". The next formal evaluation was scheduled to be conducted during the 1999-2000 school year. A parent complained that the claimant interrupted her conversation with her daughter on a day when she was volunteering in the claimant's classroom. The parent alleged that the claimant was rude to her daughter and unfairly assigned her a lunch detention. The parent brought a letter to the claimant and confronted her in front of other students, announcing loudly that her daughter would not serve that lunch detention or any other lunch detention unless it was approved by the principal. The principal backed the parent in this incident. Other students or their parents also complained about the claimant.
The claimant returned from a six month leave of absence in January of 1999.
On five occasions between February 9, and February 19, 1999, the principal and the assistant principal observed the claimant in her classroom. On February 22, 1999, the claimant submitted a letter requesting a follow-up conference about the observation. No follow-up conferences were required, since these were informal observations. Formal evaluations followed; as a result of these, the principal placed the claimant on level one of an Intensive Assistance Plan on April 26, 1999. As part of this plan, the claimant was to submit daily lesson plans which addressed activities and behavioral objectives, using a variety of learning materials and taking into account individual differences between students. She was to observe two mentor teachers during the next week and was given a copy of and told to comply with the Louisiana Components of Effective Teaching.
The assistant principal conducted followup evaluations and took extensive notes, she recommenced [sic] that the claimant be placed on level two of the Intensive Assistance Plan.
After the school year began again in August of 1999, a curriculum specialist, Marian Arrowsmith, observed in the claimant's classroom on August 30, 1999. The principal observed her on the same day. Both of them completed personnel forms and presented them to the claimant *917 for signature on September 2, 1999. The claimant refused to sign because she disagreed with the process and did not feel that it was fair. She was placed on level three of the Intensive Assistance Plan. The suggested objectives were to prepare detailed lesson plans and teach students, using the Louisiana Components of Effective Teaching. A follow up evaluation by both Ms. Arrowsmith and Ms. Doyle on September 9, 1999, led to a decision to continue with level three of the assistance plan. Ms. Arrowsmith observed again on October 13 and December 6, 1999, and remarked that the claimant "continues to lack understanding of planning and individual differences of her students. She lacks objectives and therefore teaching is scattered. Her directions and information are confusing and sometimes incorrect. There still is virtually no student interaction and involvement. There is only whole group or individual work being done. Mrs. Hearty still needs to encourage and plan for student interaction and engagement. Lack of closure to lessons."
In a letter of December 8, 1999, termination was recommended. The claimant began leave on January 14, 2000, pending the findings of the school board. At the claimant's request, the hearing was open to the public. A number of students and parents appeared and gave testimony on March 21, March 23, and March 24, 2000. Although the majority of the board did not find the claimant guilty of willful neglect of duty, they did find her guilty of incompetence. As a result, she was discharged. (Emphasis added.)
Based upon the stated findings of fact, the ALJ affirmed the agency determination of no disqualification from unemployment compensation benefits. The ALJ determined that the claimant had been discharged for her inability to meet her employer's requirements, not misconduct connected with her employment. The employer appealed the decision of the ALJ to the Review Board. The Review Board adopted and affirmed the decision of the ALJ, and the employer sought judicial review of the Review Board's decision. The district court affirmed the decision of the Review Board upholding the ALJ decision finding no disqualification of benefits. The employer now appeals to this court arguing that the ALJ's findings of fact adopted by the Review Board misstated that the employer did not find the claimant guilty of willful neglect of duty, and that therefore, the trial court erred in affirming the Review Board decision adopting the ALJ's findings of fact and failing to disqualify the claimant from unemployment benefits.

STANDARD OF REVIEW
Our appellate review in this matter is expressly and severely limited to questions of law by the legislature in La. R.S. 23:1634(B). In the absence of fraud, the findings of the Review Board are conclusive as to the facts of the case if supported by sufficient evidence. La. R.S. 23:1634(B); King v. Tangipahoa Parish Police Jury, 96-0934, pp. 3-4 (La.App. 1st Cir.2/14/97), 691 So.2d 194, 196. Courts may not disturb factual findings of the Review Board when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. Judicial review of the findings of the Review Board does not permit weighing of evidence, drawing of inferences, reevaluation of evidence, or substituting views of the court for that of the Review Board as to the correctness of the facts presented. Lewis v. Administrator, 540 So.2d 491, 496 (La.App. 1st Cir.1989). Therefore, we must determine whether the *918 facts are supported by competent evidence and whether the facts, as a matter of law, justify the Review Board's decision. Landry v. Shell Oil Co., 597 So.2d 521, 524 (La.App. 1st Cir.1992).
After reviewing the transcript of the hearing before the ALJ and the exhibits introduced at that hearing, including the charges against the claimant and the vote of the employer on the charges, we find that the evidence supports the findings of fact of the ALJ except as to the statement that the employer did not find the claimant guilty of willful neglect of duty. The employer unanimously found that the claimant was guilty of one count of willful neglect of duty, in that she failed or refused or was unable or unwilling to correct her deficiencies in her teaching in accordance with the Louisiana Components of Effective Teaching, and she had a confrontational and combative attitude when offered assistance or direction in her teaching. To the extent that the Review Board and district court relied on the ALJ's erroneous finding of fact in affirming the determination that the claimant was not disqualified for misconduct connected with her employment, the Review Board and district court erred as a matter of law. Therefore, we must make a de novo determination of whether or not the ruling of the Review Board was correct. King, 96-0934 at 4, 691 So.2d at 197.

MISCONDUCT
An employee who engages in misconduct connected with her employment is disqualified from receiving unemployment compensation benefits. See La. R.S. 23:1601(2)(a).[3] "Misconduct" has been jurisprudentially defined as intentional wrongdoing, and the employer bears the burden of proving by a preponderance of the evidence that the discharge resulted from disqualifying misconduct. See Banks v. Administrator of Dept. of Employment Sec. of State of La., 393 So.2d 696, 699 (La.1981). The misconduct must emanate from a willful or wanton disregard of the employer's interest, from an intentional breach of the employer's rules, or from a direct disregard of the standard of behavior which the employer has a right to expect from its employees. Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984). An employee can be unsatisfactory to the employer without being guilty of disqualifying misconduct. An intent to do wrong must be present. Banks, 393 So.2d at 699.
We have thoroughly reviewed the record and have found no evidence that the claimant had a "willful or wanton disregard" for her employer's rules and policies or that the claimant was engaged in deliberate conduct intended to harm her employer's interest. At the hearing before the ALJ, the claimant refuted the principal's allegations that she refused to comply with specific instructions given to her on how to make a lesson plan or teach her class. To the contrary, the evidence shows that the claimant made a good faith effort to comply with the rules and expectations of her employer, but she was unable to satisfy her employer's requirements. The employer did not provide sufficient evidence that the claimant deliberately and intentionally failed to comply with the *919 guidelines of the Louisiana Components of Effective Teaching. The claimant acknowledged that although she disagreed with the need to place her on an assistance plan, and that she refused to sign her evaluation forms involved in the plan, she nevertheless attempted to comply with the requirements of the plan. The employer did not introduce into evidence any of the lesson plans that the claimant prepared, nor did the employer prove any specific deficiency in the lesson plans other than a general statement that the claimant did not seem to follow her prepared lesson plans while being observed teaching in the classroom. The claimant denied that her lesson plans were ever late and she denied that she taught incorrect information to her students. While the conduct of the claimant may have justified the right of the employer to discharge its employee,[4] it does not necessarily follow that such circumstances warrant a disqualification of the claimant from receiving unemployment compensation benefits. See Atkins v. Doyal, 274 So.2d 438, 441 (La.App. 1st Cir. 1973). Misconduct sufficient to deny unemployment compensation and just cause needed to terminate an employee are determined by different standards. Harris v. West Carroll Parish School Bd., 605 So.2d 610, 615 (La.App. 2d Cir.), writ denied, 609 So.2d 255 (La.1992). Therefore, the finding by the employer that the defendant was guilty of willful neglect of duty is not binding on the Review Board. The employer should have produced before the ALJ the same evidence that was considered in the tenure hearing.
In summary, although the claimant's poor work performance gave the employer reason to discharge her, the employer did not prove that the claimant's incompetence and unsatisfactory work was in any way intentional. At most, the claimant's conduct constituted inadequate job performance, the inability to precisely prepare lesson plans according to established rules, procedures, and teaching guidelines, and personality attributes that did not please her immediate supervisor. Unsatisfactory work and the inability to perform job duties, without the intent to do wrong, is not "misconduct" under La. R.S. 23:1601(2)(a). See Victor v. Administrator, Office of Employment Sec., 96-251, p. 6 (La.App. 3d Cir.6/26/96), 676 So.2d 1123, 1127. Lowery v. Whitfield, 521 So.2d 815, 817 (La.App. 2d Cir.1988). Consequently, the employer did not prove by a preponderance of the evidence that the claimant was guilty of disqualifying misconduct within the meaning of the pertinent statute and jurisprudence.

CONCLUSION
For these reasons, the judgment of the district court is affirmed. Costs may not be assessed against the plaintiff-appellant, St. Tammany Parish School Board (See La. R.S. 13:4521), the defendant-appellee, Louisiana Department of Labor, Office of Employment Security (See La. R.S. 13:5112(D)), nor the defendant-claimant, Hazel Hearty (See La. R.S. 23:1692). Thus, it appears that no party to this litigation is legally responsible for the costs. The costs must therefore be absorbed by the clerk of this court and the clerk and sheriff of the trial court. See Livingston Parish School Board v. State Through Office of Employment Sec., 426 So.2d 246, 248-249 (La.App. 1st Cir.1983).
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] The claimant was originally charged with two counts of incompetence and four counts of willful neglect of duty pursuant to La. R.S. 17:443 in a proceeding for removal or other disciplinary action of a tenured, permanent school teacher. After the three-day hearing before the employer, the employer unanimously found that claimant was guilty on two counts of incompetence and one count of willful neglect of duty.
[3] La. R.S. 23:1601 provides in pertinent part:

An individual shall be disqualified for benefits:
(2)(a) If the administrator finds that he has been discharged ... for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
[4] We are not expressing an opinion or reviewing the correctness of the employer's decision to discharge claimant. Furthermore, the evidence upon which such a finding was made is not before us in these proceedings.