964 So.2d 1035 (2007)
Julius Wilson FONTENET
v.
CYPRESS BAYOU CASINO and John Wormer Smith.
No. 2006 CA 0300.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
*1036 Edward J. Cloos, III, Covington, Counsel for Plaintiff-Appellant Julius W. Fontenet.
John S. Evans, M. Blake Monrose, Lafayette, Counsel for Defendant-Appellee Chitimache Tribe of Louisiana d/b/a Cypress Bayou Casino.
J. Jerome Burden, Baton Rouge, Counsel for Defendant-Appellee Louisiana Department of Labor, Office of Employment Security.
Before: CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
PARRO, J.
A discharged employee appeals the district court's judgment affirming the decision of the Board of Review[1] pertaining to the determination that she was not entitled to receive unemployment compensation benefits because her termination was based on misconduct. For the following reasons, we affirm.

Facts and Procedural History
The Chitimache Tribe of Louisiana, doing business as Cypress Bayou Casino (Cypress Bayou), employed Julius W. Fontenet (Fontenet) as a booth cashier at its casino located in Charenton, Louisiana. Cypress Bayou terminated Fontenet's employment on April 23, 2004, following an incident in which she left a "strap" of $1 bills, valued at $100, unattended on the counter of her booth within reach of customers.
Following her discharge, Fontenet filed a claim for unemployment compensation benefits. She later received written notice from the Louisiana Department of Labor *1037 (Department) that she had been discharged from her employment as a result of her failure to abide by company rules/policies of which she was aware, that her discharge was for misconduct connected with her employment, and that she was disqualified for benefits, pursuant to LSA-R.S. 23:1601(2). Fontenet appealed the Department's determination to an appeal referee (referee). See LSA-R.S. 23:1629(A). A hearing before the referee was conducted by telephone conference on June 15, 2004, after which a written decision was issued affirming the Department's determination of disqualification[2] for Fontenet's failure to abide by company rules and policies of which she was aware.
Dissatisfied with the decision of the referee, Fontenet filed an appeal to the Board of Review (Board). See LSA-R.S. 23:1630. After considering the complete record, the Board adopted the findings of fact and conclusions of law of the referee and affirmed the referee's decision in all respects. Fontenet then filed a petition for judicial review in the district court. See LSA-R.S. 23:1634. After considering the record, the district court affirmed the decision of the Board, upholding the agency's determination of disqualification. Fontenet appealed, alleging that the district court erred as a matter of law in concluding that Fontenet's conduct constituted disqualifying misconduct under applicable statutes and jurisprudence. He also urged that the district court erred in concluding that Cypress Bayou met its burden of showing the existence of misconduct at the administrative proceeding.

Misconduct
An individual shall be disqualified for benefits if it is found that the individual was discharged by the employer for misconduct connected with his employment. LSA-R.S. 23:1601(2)(a). Misconduct is defined as "mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others." LSA-R.S. 23:1601(2)(a).
Where the employer seeks to deny unemployment benefits because of employee misconduct, the burden of proof is on the employer. Buggage v. Assumption Parish Sheriff Dept., 05-1058 (La.App. 1st Cir.5/5/06), 934 So.2d 180, 181; Clipps v. State, Dept. of Labor, 02-1780 (La.App. 1st Cir.3/28/03), 844 So.2d 321, 324, writ denied, 03-0977 (La.5/16/03), 843 So.2d 1138. Proof must be by a preponderance of the evidence. Buggage, 934 So.2d at 181.
The referee, whose findings of fact and conclusions of law were adopted by the Board, found, in pertinent part:
The claimant was employed by Cypress Bayou Casino from September 23, 1998 to April 23, 2004 as a cashier. . . . She had received write-ups or reprimands previously for work performance and related issues. The number of write-ups for work performance issues such as excessive shortages in cash drawers under her responsibility had increased in the time period prior to the claimant's discharge. The number of write-ups reached the point where the employer gave a final notice to the claimant in regards to her employment on March 03, 2004.
An incident occurred on April 16, 2004 that was discovered by the employer when they reviewed the videotapes under normal security procedures the following *1038 week. The claimant was seen to have left straps (bundles) of cash in an area in her cage that were accessible to the public while she was answering a phone that was ringing in an adjacent cage area. The claimant was supposed to have secured the money before taking any action that diverted her attention from the cash under her responsibility. Because of the prior multiple write-ups on the claimant's record the final incident was viewed as sufficient justification to warrant discharge from employment.
Based on these findings, the referee concluded that the evidence showed "misconduct connected to the employment sufficient to warrant denial of benefits" and affirmed the determination of disqualification.
Appellate review does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence, or substituting the views of this court for those of the referee or Board as to the correctness of facts. St. Tammany Parish School Bd. v. State, Dept. of Labor, Office of Employment Security, 01-0757 (La.App. 1st Cir.5/10/02), 818 So.2d 914, 917. The scope of appellate review in this matter is limited to determining whether the facts are supported by sufficient and competent evidence and whether the facts, as a matter of law, justify the action taken. See LSA-R.S. 23:1634(B); see also Johnson v. Whitfield, 521 So.2d 641, 644 (La.App. 1st Cir.1988).
In this appeal, Fontenet does not dispute the factual findings relating to her discharge, rather she disputes the determination that her conduct constituted misconduct sufficient to disqualify her from receiving benefits. She raises two primary arguments in support of this assertion. First, she contends that the referee erred in evaluating her conduct solely under the statutory definition of "misconduct," and secondly, in not considering whether her conduct constituted "misconduct" under the more restrictive definition of the term that evolved in the jurisprudence.
In the past, courts have required a showing that misconduct emanated from a willful or wanton disregard of the employer's interest, from an intentional breach of the employer's rules, from a direct disregard of the standard of behavior which the employer has a right to expect from its employees, or from negligence in such a degree or recurrence as to manifest culpability, wrongful interest, or evil design, or showing of an intentional and substantial disregard of the employee's duties and obligations to the employer to constitute disqualifying misconduct under LSA-R.S. 23:1601(2). See Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984); see also Banks v. Administrator of Dept. of Employment Security, State of Louisiana, 393 So.2d 696, 699 (La.1981).
Some courts, including this one,[3] have continued to apply this jurisprudential standard of misconduct in termination cases despite the amendment to LSA-R.S. 23:1601(2)(a) by 1990 La. Acts, No. 750, § 1, which provided a statutory definition for the term "misconduct." Notably, in defining this term, the legislature did not include the more restrictive definition of the term that had been applied in prior jurisprudence. In the absence of the incorporation of the jurisprudential standard of misconduct in its statutory definition, we must determine whether the continued consideration of the jurisprudential standard is proper. In making this determination, *1039 we find it helpful to review the evolution of the jurisprudential standard.
According to Banks, which relied on King v. Brown, 115 So.2d 405 (La.App. 2nd Cir.1959), and Turner v. Brown, 134 So.2d 384 (La.App. 3rd Cir.1961), the word "misconduct" in LSA-R.S. 23:1601 was used to connote intentional wrongdoing. Banks, 393 So.2d at 699; see Charbonnet, 457 So.2d at 678-79. At the time pertinent to Banks, LSA-R.S. 23:1601 provided, in pertinent part:
An individual shall be disqualified for benefits:
* * *
(2) If the administrator finds that he has been discharged for misconduct connected with his employment. . . .
The meaning of the term "misconduct" relied on by Banks, is rooted in Sewell v. Sharp, 102 So.2d 259 (La.App. 2nd Cir. 1958). According to the court in Sewell:
"Misconduct" is a word of general usage and is not defined in the statute itself. Resort, must, therefore, be made to the generally accepted definitions, such as wrongful, improper or unlawful conduct, motivated by premeditated, obstinate, or intentional purpose. Misconduct, within the meaning of the Unemployment Compensation Act, excluding from its benefits an employee discharged for misconduct, must be an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, and a disregard of standards of behavior which the employer has a right to expect of his employees. . . .
* * *
We do not think that the term "misconduct" as used in the Unemployment Compensation Statute, excepting employees discharged for misconduct from the benefits of the statute, should be so literally construed as to effect a forfeiture of such benefits by an employee except in clear instances. The term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception. Such appears to be the general rule. . . .
Sewell, 102 So.2d at 261-62; see Burge v. Administrator, Division of Employment Security of the Dept. of Labor, 83 So.2d 532, 535 (La.App. 2nd Cir.1955). In the absence of a statutory definition of "misconduct," the courts properly resorted to general usage in arriving at a definition of the term. See LSA-C.C. art. 11. Thus, the question to be answered is whether the 1990 enactment of a statutory definition of the term "misconduct" has done away with the need to revert to the general usage of the term to arrive at its meaning.
Those courts that have expressly considered the 1990 amendment to LSA-R.S. 23:1601 have for the most part held that "misconduct" still requires intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard for the employer's interest, without addressing why in 1990 the legislature decided to adopt a statutory definition of the term.[4]See Harsco Corp. v. Victoria, 01-1486 (La.App. 3rd Cir.3/20/02), 812 So.2d 871, 874; Taco Bell Corp. v. Perkins, 95-225 (La.App. 5th Cir.9/26/95), 662 So.2d 34, *1040 36-37; Emke v. Mouton, 617 So.2d 31, 33 (La.App. 4th Cir.1993); Hardeman v. Blache, 605 So.2d 671, 674 (La.App. 2nd Cir.1992). In directly addressing the issue, the court in Delta American Healthcare, Inc. v. Burgess, 41,108 (La.App. 2nd Cir.5/17/06), 930 So.2d 1108, 1112, after considering the purpose of unemployment compensation, concluded that the legislature's addition to LSA-R.S. 23:1601 was intended to be illustrative and was not intended to substantively change the law by deleting the requirement of proving deliberate misconduct. Delta American Healthcare, Inc., 930 So.2d at 1112.
Although the first circuit has not expressly tackled the issue of the legislative intent behind the 1990 amendment, subsequent to the amendment, it applied the pre-1990 jurisprudential standard in St. Tammany Parish School Bd., 818 So.2d at 918, and Clipps, 844 So.2d at 324. See Brandon v. Lockheed Martin Corp., 03-1917 (La.App. 4th Cir.4/14/04), 872 So.2d 1232, 1239 n. 4. However, when faced directly with the issue of whether a referee had legally erred in failing to require a showing of intent to do wrong, this court in Buggage found that the referee was legally correct in applying the definition of misconduct found in LSA-R.S. 23:1601(2) in determining whether the former employee's actions were sufficient to result in a disqualification for unemployment benefits. Buggage, 934 So.2d at 182. The former employee's argument regarding the continued applicability of the jurisprudential standard was found to lack merit. See Id. In an effort to resolve the conflict in the first circuit as to the continued applicability of the jurisprudential standard of "misconduct," this matter was presented for en banc consideration.
In 1990, the legislature amended LSA-R.S. 23:1601(2)(a) to include a definition for the term "misconduct," as previously set forth. This definition outlines the types of behavior that will result in a disqualification for unemployment compensation benefits. Buggage, 934 So.2d at 182. This list does not include behavior characterized as an intentional breach of the employer's policies or rules, or negligence to such an extent as to manifest culpability, or an intentional and wanton disregard of the employer's interest.
By its passage of Act 750 in 1990, the legislature has spoken. Legislation is a solemn expression of legislative will. LSA-C.C. art. 2. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9.
The law is clear in this case. It succinctly sets forth what types of behavior constitute misconduct.[5] By Act 750, LSA-R.S. 23:1601(2)(a) was amended to define for the first time the term "misconduct," and that definition includes no reference to intentionality, willfulness, or wantonness. As the legislature is well acquainted with the term "intentional," as well as such other related terms as "willful" and "wanton," it is difficult to believe it was through mere oversight that the legislature failed to use any of these or equivalent terms in its statutory definition of "misconduct."[6] *1041 Harris v. Houston, 97-2847 (La.App. 4th Cir.11/4/98), 722 So.2d 1042, 1046 (Byrnes, J., concurring). Thus, we conclude that the legislative enactment of a statutory definition of "misconduct" in 1990 had the effect of supplanting the jurisprudentially-created standard of Charbonnet, Banks, and other similar cases. For these reasons, we find no merit to Fontenet's claim that the referee and the Board erred in evaluating her conduct solely under the statutory definition of misconduct and in failing to consider it under the more restrictive standard initially established by pre-amendment jurisprudence. To the extent that this court's decisions in St. Tammany Parish School Bd., 818 So.2d 914, and Clipps, 844 So.2d 321, hold to the contrary, they are overruled.

Disqualification for Unemployment Benefits
In response to Fontenet's claim for unemployment compensation benefits, the Department indicated that Cypress Bayou had discharged her for violation of company/department procedure relating to drawer security. According to Fontenet's supervisor, all employees are responsible for the control of their bank. Employees are expected to verify all strapped and clipped monies and to double check all cash in and cash out transactions to reduce variations. Cashiers are trained on drawer security. Drawer security policies and procedures required that currency not in use remain in the drawers at all times. These policies and procedures provided that the booth cashiers were not to lay cash in the sight or reach of customers when the cash in their drawer was being verified. On October 29, 1998, Fontenet acknowledged in writing to having received a copy of Cypress Bayou's "Cage Standards and Procedures Manual," which sets forth the polices and procedures in question.
According to Fontenet's supervisor, the booth counters have two tiers. The bottom counter is specifically built to accommodate the cashier's money so that the currency is out of the sight and reach of the customers. The upper (customer) counter is used for transactions with customers. The supervisor further stated that cashiers should not leave money unattended on the customer counter for any reason and that placing the currency on the customer counter, unattended, puts the casino funds at risk.
While Fontenet was counting the money on April 16, 2004, she left the strap of money ($100) on the upper counter[7] within reach of customers for approximately 30 to 45 seconds. She had been written up for variations that occurred in her cash balances on February 14, 2003, and September 12, 2003. She was suspended for variations that occurred on December 10, 2003, and January 13, 2004. In February 2004, Fontenet incurred 10 "cage variations" or shortages in her cash balances totaling over $200. The increase in her balancing errors over the last six months of her employment prompted a final counseling session in March 2004 and resulted in her being placed on probation.
After reviewing the record in its entirety, we conclude Cypress Bayou provided sufficient evidence to support the Board's factual findings that Fontenet's performance established a pattern of violations of Cypress Bayou's rules/policies in regard to cash handling and related work issues.[8] *1042 Thus, under LSA-R.S. 23:1634(B), the Board's factual findings are conclusive and our jurisdiction is limited to questions of law. Accordingly, we must determine whether the findings of fact, under Louisiana law, justify the Board's decision. Based on our review of the law, we determine it is clear that Fontenet's actions constituted "misconduct" as defined by LSA-R.S. 23:1601(2)(a), and we conclude the Board's decision was legally correct.

Conclusion
For the foregoing reasons, we affirm the judgment of the district court. Costs of this appeal may not be assessed against Fontenet under the facts of this case. See LSA-R.S. 23:1692.
AFFIRMED.
GUIDRY, J., concurs in the result.
CARTER, C.J., concurs.
NOTES
[1] The Board of Review is within the Office of Regulatory Services in the Louisiana Department of Labor. See LSA-R.S. 23:1651 and 1652.
[2] The referee modified the notice of claim determination to show April 23, 2004, as the effective date of Fontenet's disqualification.
[3] See St. Tammany Parish School Bd., 818 So.2d at 918-19.
[4] Harris v. Houston, 97-2847 (La.App. 4th Cir.11/4/98), 722 So.2d 1042, 1046-47 (Byrnes, J., concurring).
[5] Thus, the need to revert to the general usage of the term to arrive at its meaning is no longer justifiable.
[6] Finding that the continued application of the "willful or wanton" test favors the beneficial purpose underscoring the adoption of the unemployment compensation act, the third circuit refused to interpret the legislature's action in 1990 as an effort to abandon the jurisprudential standard. The court in Harsco Corp. declined to change the third circuit's course in the absence of a clear legislative expression signaling the legislature's intent to abandon the "willful or wanton" test. Harsco Corp., 812 So.2d at 874; see Delta American Healthcare, Inc., 930 So.2d at 1112. We disagree with this approach.
[7] Cashiers were not to leave money unattended on the upper counter for any reason.
[8] We note that these violations constituted neglect that placed in jeopardy the property of Cypress Bayou.