WHIPPLE, C.J.
*1210 Brian Lewis, the claimant herein, appeals the district court's judgment that affirmed the decision of the Board of Review disqualifying him from unemployment benefits due to his misconduct during employment. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Lewis was employed by Wal Mart Associates, Inc.,[1] at one of its Sam's Club stores, as a part-time lot attendant. On February 14, 2017, his employment was terminated on the basis that he had accepted a gratuity from a club member, in violation of company rules.
Following his discharge, Lewis filed a claim for unemployment compensation benefits. However, his claim for benefits was denied based on a finding that he had been discharged for violation of a company policy of which he was aware.
Lewis appealed the Agency's determination to the Appeals Tribunal of the Louisiana Workforce Commission. See LSA-R.S. 23:1628, LSA-R.S. 23:1629(A), & LAC 40:IV.109. After conducting a hearing by telephone, an Administrative Law Judge ("ALJ") with the Appeals Tribunal issued a written decision affirming the Agency's determination of disqualification. See LAC 40:IV.115 & LAC 40:IV.123.
Lewis then appealed to the Board of Review ("the Board"). See LSA-R.S. 23:1630 & LAC 40:IV.125. After review of the record, the Board affirmed the ALJ's decision disqualifying Lewis from unemployment compensation benefits.
Lewis then filed a petition for judicial review in the district court. See LSA-R.S. 23:1634(A). After considering the record and oral argument of the parties, the district court issued a "Ruling," concluding that the Board's decision was lawfully supported by the evidence and, thus, "order[ing] that the relief [Lewis sought] in his request for judicial review be dismissed and the Board's decision affirmed." Thereafter, by judgment dated December 13, 2017, the district court, in accordance with its "Ruling," affirmed the decision of the Board, which had affirmed the ALJ's disqualification of Lewis for unemployment compensation benefits.
Lewis now appeals to this court. While he does not specifically list any assignments of error, Lewis essentially contends that there was no evidence against him filed in the case.
*1211 RULE TO SHOW CAUSE ORDER
Prior to addressing the merits of Lewis's appeal, we first address a Rule to Show Cause Order issued by this court on February 20, 2018. This court noted therein that Lewis had filed a motion for appeal on November 21, 2017, seeking to appeal the November 20, 2017 "Ruling" of the district court. However, the district court's judgment was not signed until December 13, 2017. As further noted by this court, neither the motion for appeal nor the order of appeal signed on December 18, 2017, reference the December 13, 2017 judgment. Thus, this court ordered the parties to show cause by briefs why the appeal should or should not be dismissed.
Appeals are favored in law, must be maintained wherever possible, and should not be dismissed on mere technicalities. Fruehauf Trailer Co. v. Baillio, 252 La. 181, 190, 210 So.2d 312, 315 (1968) ; Wells v. Hannah, 2017-1399 (La. App. 1st Cir. 4/6/18), 2018 WL 1663032 (unpublished). The motion for appeal filed by Lewis on November 21, 2017 presents two problems: it was filed before a judgment on the merits was signed, and it lists the date of the trial court's Ruling, rather than the date of the later-signed judgment on the merits. As to the premature filing of the motion for appeal, a defect arising from a premature motion for appeal (i.e., one taken before the signing of a final judgment) is cured once the final judgment has been signed. Chauvin v. Chauvin, 2010-1055 (La. App. 1st Cir. 10/29/10), 49 So.3d 565, 568 n.1 ; City of Denham Springs v. Perkins, 2008-1937 (La. App. 1st Cir. 3/27/09), 10 So.3d 311, 317 n.5, writ denied, 2009-0871 (La. 5/13/09), 8 So.3d 568.
With regard to the listing in the motion for appeal of the date of the trial court's Ruling rather than the date of the judgment on the merits, we note that while entitled "Ruling," the November 20, 2017 Ruling of the district court was in the nature of written reasons for judgment and specifically stated that a judgment in accordance with the ruling was to be submitted to the court for signature. We further note that in Magnum Corporation v. Dauphin, 286 So.2d 415, 415-416 (La. App. 3rd Cir. 1973), the Third Circuit Court of Appeal held that the fact that the plaintiff had inadvertently placed the date of the Reasons for Judgment rather than the date of the final judgment on its petition for appeal was immaterial and, thus, the court denied a motion to dismiss the appeal. Additionally, in denying an application for rehearing, the court further held that the fact that the order granting the appeal was signed before the judgment was signed was likewise immaterial under the facts therein. Magnum Corporation, 286 So.2d at 416 (per curiam on application for rehearing).
In the instant case, while Lewis, who is a pro se litigant, prematurely filed a motion for appeal from the district court's Ruling, his brief on appeal clearly indicates his intent to appeal from the judgment denying his petition for review. Additionally, we note that after the district court signed its judgment on December 13, 2017, and after notice of the judgment was mailed to the parties on December 18, 2017, Lewis timely filed a second motion for appeal on December 22, 2017, seeking to appeal the district court's December 13, 2017 judgment. In this motion for appeal, Lewis noted that the court's computer system indicated that the district court had granted his appeal, but further indicated that he had "to play safe," apparently referring to the filing of the second motion for appeal after the original motion had been granted. The district court ultimately denied this second motion for appeal on February 14, 2018, noting as follows: "Plaintiff filed two motions for appeal from *1212 the Judgment signed on December 13, 2017. The first appeal order was signed on December 13, 2017. Since this is a duplicate motion and is unnecessary, it is hereby denied."
Considering the foregoing, and because appeals are favored in law, must be maintained wherever possible, and should not be dismissed on mere technicalities, we recall the Rule to Show Cause Order and maintain the appeal.
DISCUSSION
Under the provisions of the Louisiana Employment Security Law, LSA-R.S. 23:1471 etseq., an individual shall be disqualified for unemployment compensation benefits upon a finding that the individual was discharged by the employer for "misconduct connected with his employment." LSA-R.S. 23:1601(2)(a). "Misconduct" is defined as "mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others." LSA-R.S. 23:1601(2)(a). When an employer seeks to deny unemployment benefits because of employee misconduct, the burden is on the employer to establish such misconduct by a preponderance of the evidence. Fontenet v. Cypress Bayou Casino, 2006-0300 (La. App. 1st Cir. 6/8/07), 964 So.2d 1035, 1037. Repeated violations in the face of warnings have been held to amount to misconduct. Jackson v. Administrator, Department of Employment Security of State, 511 So.2d 1309, 1312 (La. App. 2nd Cir. 1987).
Appellate review of an unemployment compensation proceeding is provided for under LSA-R.S. 23:1634(B), with the scope of review limited to determining whether the facts are supported by sufficient and competent evidence and, in the absence of fraud, whether the facts, as a matter of law, justify the action taken. Fontenet, 964 So.2d at 1038. Judicial review of the findings of the Board does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence, or substitution of the views of the court for that of the Board as to the correctness of the facts presented. Gonzales Home Health Care, L.L.C. v. Felder, 2008-0798 (La. App. 1st Cir. 9/26/08), 994 So.2d 687, 690-691, writ not considered, 2008-2568 (La. 1/9/09), 998 So.2d 730.
During the April 13, 2017 telephone hearing conducted in the instant case by the ALJ, Christopher Charles, the Sam's Club manager, testified that Sam's Club has a written policy that prohibits its associates from accepting tips or gratuities and that the penalty for violation of the policy is automatic termination of employment. According to Charles, Lewis was aware of this policy, which Charles had personally discussed with Lewis and which is explained in computer-based learning that every new associate with Sam's Club must complete. Charles explained what had occurred on the date that Lewis was discharged. Although other associates had previously reported witnessing Lewis accepting tips, on the date of Lewis's discharge, Charles personally witnessed this behavior from a distance of about ten feet away. Specifically, he witnessed Lewis assisting a Sam's Club member in loading a heavy product in the parking lot and then saw the member hand Lewis money. According to Charles, Lewis bowed to the member, took the money, and quickly concealed it in his left back pocket.
At that point, Charles immediately approached Lewis and escorted him to the manager's office. Charles then called Michelle Lambert, a member services assistant manager who was Lewis's supervisor, into the office in order to have a witness *1213 present. According to Charles, he asked Lewis to explain what had just taken place. When Lewis responded that he was just helping a member load, Charles asked him what was in his left back pocket that the member had given him. Charles relayed that Lewis then took five dollars out of his pocket and said "Oh, I was going to turn that money in."
Charles then explained to Lewis that accepting tips was against company policy, that violation of the policy called for automatic termination, and that Lewis had been previously counseled in several conversations about accepting tips. According to Charles, Lewis repeatedly insisted that he wanted to go get the member who had tipped him so the member could tell Charles that he had placed the tip in Lewis's hand. However, Charles responded to Lewis that he knew that the job required him to provide member service without receiving an incentive to do so. Accordingly, based on what he had witnessed firsthand, Charles informed Lewis that his employment was terminated.
When questioned by the ALJ as to what Lewis was supposed to do if someone offered him a tip, Charles testified that Lewis should have explained to the member that providing great member service was part of his job. Moreover, if someone insisted that Lewis take a tip, Lewis should have immediately turned the money in to a member of management, who would then donate the money to Children's Miracle Network, a charity supported by Sam's Club. Charles explained that Sam's Club compensates its associates "a little more" than any of its competitors to provide great customer service. Additionally, associates in several job roles earn equal pay for providing great service. Thus, if parking lot attendants are allowed to accept tips, it becomes an equal pay issue.
Lewis declined to cross-examine Charles or to testify himself during the telephone hearing.[2]
Based on our review of the record, we conclude that the factual findings by the ALJ and the Board are supported by competent evidence, and these facts, as a matter of law, justify the action taken. Because Lewis was discharged for "misconduct" for his violation of company policy, he was ineligible for unemployment compensation benefits. See LSA-R.S. 23:1601(2)(a). The district court properly affirmed the Board's decision.
CONCLUSION
For the above and foregoing reasons, the district court's December 13, 2017 judgment is affirmed. We decline to assess *1214 costs of this appeal against Brian Lewis under the facts of this case. See LSA-R.S. 23:1692.
RULE TO SHOW CAUSE ORDER RECALLED; APPEAL MAINTAINED; JUDGMENT AFFIRMED.

The exact name of Lewis's employer is unclear from the record. While the Louisiana Workforce Commission listed Lewis's employer as "Wal Mart Associates Inc.," the Exit Interview Form completed on Lewis's last day of employment lists "Wal-Mart Stores, Inc." as his employer. Additionally, a brief was filed in the district court by "Sam's East, Inc." as "[r]espondent," averring that it had been improperly named as "Sam Club Store" and asking the court to affirm the denial of unemployment benefits to Lewis.

Instead, in a closing statement, Lewis argued that he had done a great job at Sam's Club and that he had done his job according to the policy and procedures.
Additionally, we note that in his petition for judicial review, Lewis stated that he was attaching to his petition statements from Sam's Club customers, which allegedly show that Lewis refused to accept money tips offered to him, and he attached three such written statements to the petition. The usual rules of evidence, including the rules regarding hearsay, do not apply to an unemployment compensation hearing. LSA-R.S. 23:1631, LAC 40:IV.115(C) & (D), Woods v. Cameco Industries, Inc., 2001-0298 (La. App. 1st Cir. 3/28/02), 815 So.2d 370, 375, While at the beginning of the April 13, 2017 telephone hearing, Lewis indicated to the ALJ that he had "sent in ... about two hundred pages of evidence," the transcript of the hearing indicates that only one written statement, that of a Shellie (or Shelley) Jones, was admitted into evidence at the telephone hearing. In this statement, which bears a date of January 5, 2016, Jones indicated that Lewis did not want a tip, but she "made him take it." Additionally, we note that even if all of these statements had been considered at the administrative level, they have no bearing on the events that occurred on the date Lewis's employment was terminated.