579 So.2d 1228 (1991)
OPERATORS, INC., Plaintiff-Appellee,
v.
Lovelace COMEAUX and Administrator, Louisiana Department of Employment Security, Defendants-Appellants.
No. 89-1229.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*1229 Jones, Walker, Waechter, Poiterent, Carrere & Denegre, Ellen S. Kovach, New Orleans, for plaintiff-appellee.
Frank T. Scott, Jr., Baton Rouge, Jeansonne & Briney, Christopher L. Zaunbrecher, Lafayette, for defendants-appellants.
Before DOMENGEAUX, C.J., and GUIDRY and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
In this unemployment compensation case, Operators, Inc. sought judicial review by the district court of a decision by the board of review awarding benefits to its former employee, Lovelace Comeaux. The trial court reversed the board of review's ruling and disqualified the claimant.
The claimant, Lovelace Comeaux, appeals.
Comeaux, employed by Operators, Inc. as "Lease Operator A," was responsible for certain maintenance duties on offshore drilling platforms. On August 25, 1986, Comeaux was injured when swirling winds blew spray paint into his eyes. Operators' accident investigation committee determined that Comeaux removed his safety goggles and continued to paint, in violation of company policy. As a result of the accident, Comeaux was demoted to "Lease Operator B" and received a cut in pay.
Comeaux vigorously protested his demotion, insisting that his employer's accident review committee was in error. However, he continued to perform his job duties for one hitch after he was informed of the demotion. When he returned to Operators' office on October 15, 1986, he was asked by district manager Omer Smith if he could accept the disciplinary action taken by the safety committee. Comeaux stated he could not accept the committee's action. Smith described Comeaux's manner as "hostile." According to Smith, Comeaux threatened to call the "labor board" and the "Houston office" if he was not reinstated. Smith then informed Comeaux if he did not resign he would be fired. When Comeaux refused to resign, he was terminated.
Smith testified Comeaux was fired for his "safety attitude," although he later stated, and the appeals referee found, that Comeaux's termination was not a result of the safety violation. He was fired because he would not "accept" the disciplinary action of the investigation committee.
After a hearing, the appeals referee affirmed the agency's disqualification of benefits, finding Comeaux's refusal to accept the safety committee's action "can amount to saying that he would not do as instructed." The board of review reversed the referee because it found the plaintiff's supervisor should have stopped him from spray painting on a windy day. The district judge then reversed the board of review's ruling and reinstated the referee's disqualification.
The scope of judicial review of a decision by the board of review is defined in La.R.S. 23:1634:
In any proceeding under this Section, the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Although the two administrative tribunals reached different conclusions, there is no real conflict between the findings of fact of the board of review and of the appeals referee. The board of review did add an additional factual finding that the claimant's supervisor should have prevented him from painting on a windy day. We disagree with the trial judge that this finding is not supported by the record. Nevertheless, we do not find this fact pertinent to the question of whether the claimant is entitled to unemployment benefits because, from the record, it is clear he was not fired as a result of the events on the date of his accident. Rather, he was fired for his refusal "to accept" the disciplinary action taken against him. The issue presented is whether this refusal, as a matter of law, *1230 amounts to disqualifying misconduct under La.R.S. 23:1601.
La.R.S. 23:1601(2) provides that an individual shall be disqualified from receiving unemployment compensation benefits if the administrator finds that he has been discharged for misconduct connected with his employment. The misconduct must have resulted from a willful or wanton disregard of the employer's interest, from a willful violation of the employer's rules or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3d Cir.1976).
The employer has the burden of proving willful misconduct by a preponderance of the evidence. Charbonnet v. Gerace, 457 So.2d 676 (La.1984). Because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification. Charbonnet.
Complaints by an employee do not constitute disqualifying misconduct. Jantzen of Louisiana, Inc. v. Administrator, Louisiana Office of Employment Security, 539 So.2d 781 (La.App. 3d Cir.1989). Nor will a single "hot-headed incident" disqualify the employee from receiving benefits. See Gunn v. Gerace, 516 So.2d 1180 (La.App. 2d Cir.1987), where the employee's use of profanity in a heated discussion after his paycheck was docked was not held to be disqualifying misconduct. However, insubordination and refusal to follow reasonable instructions are sufficient grounds for denying benefits. Dorsey v. Administrator, Louisiana Department of Employment Security, 353 So.2d 363 (La.App. 1st Cir.1977), writ denied, 355 So.2d 549 (La.1978).
In the instant matter, the referee found Comeaux's refusal to accept the committee's disciplinary action "can amount to saying that he would not do as instructed, and this was misconduct connected with the work." This conclusion is not supported by the facts in evidence. The record contains no evidence that Comeaux ever refused to do his job. He continued to work after his demotion. Smith testified that Comeaux still had a job until the confrontation on the date he was terminated.
Regarding this confrontation, Smith testified as follows:
REFEREE: Okay, well you still have not answered my question. What did he do to say that he was not accepting it. Did he out right refuse to go out, or whatwhat exactly did he do?
SMITH: He just said, I'm not going back to work for that. Well, Iyou know, I don't feel like been treated fairlyand that's it.
REFEREE: Okay, did he tell you he was not going back offshore?
SMITH: I'm not sure that hehe said it exactly that way. But he did say (Inaudible) that he couldn't accept the promotiondemotion. He said, he couldn'the could not accept the actions of the safety investigating committee.
Joe Soileau, also present at that meeting, testified, "The best I can remember is that he cannot agree with the action that was taken as far as the demotion was concerned. That he didn't agree with everything in the accident report."
At most, Operators has only proved that Comeaux refused to agree with the accident investigation committee's report and subsequent action. Operators has not shown that Comeaux refused to do his job or refused to follow safety instructions. Operators contends Comeaux was fired for his "safety attitude," but the record reveals Comeaux had an accident-free record with the company for five years prior to the 1986 spray painting incident, although he did have five minor accidents from 1978 to 1980. Considering the above, we agree with the board of review that Comeaux's actions are not disqualifying misconduct.
For the above and foregoing reasons, the judgment of the trial court is reversed and the decision of the board of review awarding benefits to Lovelace Comeaux is reinstated. *1231 Costs of this appeal are assessed to Operators, Inc.
REVERSED, AND RENDERED.