657 So.2d 391 (1995)
CONAGRA BROILER COMPANY, Plaintiff-Appellee,
v.
Joseph GERACE, Administrator, Office of Employment Security of Louisiana and Marie Demery, Defendants-Appellants.
No. 95-41.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*392 Steven D. Crews, Natchitoches, for Conagra Broiler Co.
Frank Theo Scott Jr., Baton Rouge, for Joseph Gerace Adm. of Emp. Sec. of La. et al.
James Earl Calhoun, Natchitoches, for Marie Demery.
Before LABORDE, WOODARD and AMY, JJ.
WOODARD, Judge.
This appeal arises from a claim for unemployment compensation benefits.

FACTS
On July 26, 1993, defendant, Marie Demery, was discharged from her position as Quality Assurance (QA) Technician for plaintiff, ConAgra Broiler Company, for leaving her assigned station during work hours to discuss personal business with another employee. Demery, who holds a doctorate degree in Educational Communications and Technology, applied for unemployment compensation benefits, but the Office of Employment Security (the "agency") ruled that she was disqualified from receiving unemployment *393 benefits because she had been discharged for misconduct connected with her employment. Demery appealed this ruling to an Appeals Tribunal within the agency, and the Administrative Law Judge (ALJ) reversed the agency's decision and removed the disqualification, finding that no misconduct had occurred. ConAgra appealed to the agency's Board of Review, which affirmed the ALJ's decision.
ConAgra then filed for judicial review of the Board's decision. The trial court held that Demery's actions amounted to misconduct as a matter of law and, therefore, she was ineligible for unemployment compensation. She now appeals, asserting that the trial court erred in disqualifying her from receiving benefits.

LAW
An individual is disqualified from receiving unemployment compensation if she has been discharged as a result of "misconduct connected with her employment." La. R.S. 23:1601(2). Deliberate violation of a policy or rule adopted by the claimant's employer to ensure orderly work conditions constitutes misconduct for purposes of the unemployment compensation statute, if the claimant was aware of the policy or rule. La.R.S. 23:1601(2)(a); Charbonnet v. Gerace, 457 So.2d 676 (La.1984). Absence from an assigned work area in deliberate violation of company policy may constitute misconduct sufficient to justify denial of unemployment compensation. Williams v. Administrator of Office of Employment Security, Department of Labor, 474 So.2d 544 (La.App. 3 Cir.1985). A claimant's history of disregarding company rules is relevant to the determination of whether benefits should be denied, but a single violation may be sufficient to sustain such a denial. Hardeman v. Blache, 605 So.2d 671 (La.App. 2 Cir.1992). Due to the beneficial purpose of this statute, the term "misconduct" must be construed so as to favor the award of benefits rather than disqualification. Charbonnet, 457 So.2d 676.
The party alleging misconduct must prove that it has occurred by a preponderance of the evidence. Hardeman, 605 So.2d 671. Judicial review of unemployment compensation cases is limited to a determination of whether the Board's findings of fact are supported by sufficient evidence and whether these facts warrant the Board's decision as a matter of law. La.R.S. 23:1634(B); Ortego v. Administrator of Louisiana Division of Employment Security, 626 So.2d 959 (La.App. 3 Cir.1993).
The Board adopted the ALJ's findings of facts that Demery left her assigned work area on July 23, 1993 to discuss personal business with Patricia New, another QA Technician, that this conduct violated a company policy requiring all employees to remain at their assigned positions throughout the work day, that Demery was aware of this policy, and that she had been counseled repeatedly for disruptive behavior and violation of company rules.
Demery disputes these findings, asserting that she was never informed of the rule requiring her to remain at her work station and that it was routinely ignored. Demery, a 47-year-old African-American woman, claims that her difficulties with ConAgra's management stem from sexual, racial, and age discrimination against her and that she was dismissed as a result of complaints she filed with the Equal Employment Opportunity Commission and other allegations of discrimination. However, her story is contradicted by the testimony of every witness called at the administrative hearing.
New and QA Supervisor, Gloria Mohammed, testified that Demery was away from her assigned position visiting New at approximately 9:16 a.m. on July 23, 1993. New and Demery stated that they were discussing ConAgra's alleged sexual discrimination at the time, which is clearly personal business regardless of whether it relates to the employer's conduct. New, QA Technician, Veronica Bush, and Quality Checker, Veronica Johnson, testified that they knew that it was ConAgra's policy not to permit employees to leave their assigned positions during the work day. Bush stated that she never disobeyed this rule and that she expected that a supervisor would at least counsel a QA Technician caught socializing in an unassigned area. Johnson noted that quality *394 checkers were sometimes absent from their work stations, but only after completion of their assigned work.
Plant Personnel Manager, Betty Hardison, indicated that Demery knew of the rule because she was given a copy of the memo in which the policy regarding absences from work stations was promulgated, and because all QA employees were expected to be familiar with this and other policies. Mohammed and New confirmed that all employees were shown the policy, and Mohammed further testified that the rule is normally followed.
Risher, Hardison, and Mohammed testified that Demery generally had a "problem" with others who disagreed with her and that she was not receptive to instructions from her supervisors. Risher, Mohammed, and Taylor recalled that Demery called them "liars" or "prevaricators" when she disagreed with them, and New confirmed that Demery "talked back" to her superiors disrespectfully. Risher, Hardison, and Taylor noted that Demery had been counseled repeatedly as a result of her disruptive behavior, negative attitude, and violation of company rules, including a verbal reprimand issued by Risher on January 29, 1993 as a result of Demery's disruptive behavior. Additionally, Taylor, Risher, Mohammed, New, and shift manager, Marty Guillory, testified that Demery shouted at Taylor rudely during a confrontation on February 3, 1993, during which Demery shook her finger at him in a threatening manner and ignored his order to leave his office. This conduct violated several of ConAgra's rules of conduct, and Taylor issued her a final written notice that another occurrence of disruptive behavior would result in her termination. Finally, Risher testified that Demery would not have been fired if she had remained at her work station on July 23, 1993 but that this was simply the last episode of misconduct by Demery that ConAgra was willing to tolerate.
After a thorough review of the record, we find that there is not the slightest trace of evidence, other than her own testimony, to support Demery's claim that she was fired as a result of discrimination or her complaints to the EEOC or ConAgra's management. On the contrary, the evidence presented at the administrative hearing leads inescapably to the conclusion that Demery was discharged solely as a result of her misconduct; namely, her failure to abide by the rules, and that she knowingly violated this rule after she had been given a final written warning that termination was imminent if her disruptive behavior continued. Since the unemployment compensation statute encompasses this type of misconduct, the district court did not err in disqualifying Demery from receiving unemployment benefits.

CONCLUSION
For the foregoing reasons, we affirm the decision of the district court in favor of appellee, ConAgra Broiler Company. Costs are to be absorbed by the clerk of this court and the clerk and sheriff of the trial court. La.R.S. 23:1548; La.R.S. 23:1692; Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1 Cir.1983).
AFFIRMED.