|,PETERS, J.
This litigation arises from the termination of Patricia Harville’s employment with ConAgra Poultry Company (ConA-gra). ConAgra appeals a judgment of the district court, reversing the decision of the Department of Labor, Office of Employment Security (Department) that denied Ms. Harville unemployment compensation benefits (benefits). ConAgra asserts that the district court erred in concluding that the evidence was insufficient to disqualify Ms. Harville from receiving benefits.
Patricia Harville’s employment with ConAgra in its Natchitoches Parish facility extended from September 27, 1983, until September 10, 1997, at which time ConA-gra suspended her for violating a company leave policy. At the time of her suspension, Ms. Harville held the position of production manager. One of her duties as production manager was to consider requests for leave from employees and, if appropriate, to prepare and sign leave-of-absence forms recommending that the | ¡^request be granted. Ms. Harville was to then take the completed leave-of-absence form to her immediate supervisor for his signature and final approval.
In late July of 1997, one of Ms. Har-ville’s subordinates approached her, requesting a leave-of-absence for two weeks to spend time with a sick relative. Ms. Harville approved the leave, signed a blank leave-of-absence form and gave the form to the employee with instructions that she take the form to ConAgra’s production manager for final approval. Instead of following Ms. Harville’s instructions, the employee completed the leave-of-absence form request for seven weeks instead of two and forged the production manager’s signature. When confronted with her failure to follow company policy, Ms. Harville explained that she gave the employee the incomplete form because she was very busy at the time and because of increased pressures at work due to an expanding workload coupled with sexual harassment from her immediate supervisor. Five days after her September 10 suspension, ConAgra terminated Ms. Har-ville’s employment with the company. ConAgra based its decision to terminate Ms. Harville’s employment on this incident as well as her employment history. Ms. Harville then brought this claim for unemployment compensation benefits, which was opposed by ConAgra.
A hearing before a Department hearing officer resulted in a decision adverse to Ms. Harville, and the Department Board of Review (Board) affirmed that decision. Ms. Harville then sought judicial review pursuant to La.R.S. 23:1634.
On review, the district court initially remanded the matter to the Department for the taking of further evidence and testimony. The second Department hearing and review by the Board again resulted in a decision denying Ms. Harville benefits. The district court then reviewed the supplemented record and reversed the Department’s [ ^decision, concluding that the evidence was insufficient to disqualify Ms. Harville from benefits. Both ConAgra and the Department have appealed.
An employee may be denied benefits for “misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.” La.R.S. 23:1601(2)(a). As stated in ConAgra Broiler Co. v. Gerace, 95-41, p. 3 (La.App. 3 Cir. 5/31/95); 657 So.2d 391, 391, “[t]he party alleging misconduct must prove that it has occurred by a preponderance of the evidence. Judicial review of unemployment compensation cases is limit *45 ed to a determination of whether the Board’s findings of fact are supported by sufficient evidence and whether these facts warrant the Board’s decision as a matter of law.” (Citation omitted).
Not every act of misconduct is sufficient grounds for denying an individual benefits. As stated in Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984), “the ‘misconduct’ must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees.” Whether a policy violation warrants withholding unemployment benefits is a question which must be determined not by examining the employer’s rules, but by statute. Cabezas v. Administrator, Div. of Employment Sec., 557 So.2d 985 (La.App. 4 Cir.1990). Additionally, “[b]ecause of the beneficial purpose of unemployment compensation, the term ‘misconduct’ should be construed so as to favor the awarding of benefits rather than disqualification.” Gobert v. Louisiana Dep’t of Employment Sec., 94-1018, p. 5 (La.App. 3 Cir. 3/8/95); 651 So.2d 508, 611; Operators, Inc. v. Comeaux, 579 So.2d 1228, 1230 (La.App. 3 Cir.1991). However, a “[d]eliberate violation of a policy or rule adopted by the claimant’s employer to ensure orderly work conditions constitutes misconduct for purposes of the unemployment compensation statute, if the claimant was aware of the policy or rule.” ConAgra Broiler Co., 657 So.2d at 393. Also, although a single policy violation might be sufficient misconduct to bar the receipt of benefits, an employee’s work history of prior instances of disregarding company rules is a relevant consideration in determining if benefits are due. Id.
At the hearings conducted in this litigation, Ms. Harville admitted that she signed the blank leave-of-absence form and supplied it to the employee in question. She also acknowledged that she was aware this action on her part violated company policy. According to Ms. Harville, either she or the employee should have completed the form, she [Ms. Harville] should have then signed it, and either she or the employee should have then obtained the production manager’s approval.
ConAgra introduced several exhibits addressing Ms. Harville’s history of difficulty in her employment with the company. These can be summarized as follows:
1. On August 10, 1992, ConAgra issued Ms. Harville a “Final Written Warning” concerning her job performance. In this correspondence, ConAgra informed Ms. Harville that she had been investigated for requiring employees to run personal errands for her on company time and for failing to maintain accurate records concerning employee attendance records. ConAgra asserted in this document that Ms. Harville’s performance in this area was too defective as to be “classified as just poor paperwork and/or ‘forgetfulness’ ” and that it evidenced proof of Ms. Harville showing favoritism toward certain employees. Ms. Harville was warned that her failure to address these concerns would result in the company taking further corrective action, including [ 5 termination of her employment.
2. On June 6, 1995, ConAgra issued a letter to Ms. Harville, confirming a series of oral counseling discussions between Ms. Harville and her superiors, concerning ways to prevent spoilage in her work area. While not directly criticizing Ms. Harville’s job performance, the letter concludes by stating that Ms. Harville was expected “to get more involved with your employees and motivate them to correct theses [sic] problems.” The letter concluded by suggesting that her failure to do so might result in “further disciplinary actions.”
3. On August 6, 1996, ConAgra issued a letter to Ms. Harville, criticizing her job performance because of her failure *46 to properly handle a customer order and her failure to timely notify the appropriate authorities of that failure. The letter suggested that Ms. Har-ville’s “lack of supervision ... is totally unacceptable and will not be tolerated.”
4. On November 25, 1996, ConAgra issued a letter to Ms. Harville, confirming an oral counseling discussion with Ms. Harville, concerning a November 15 U.S.D.A. mandated work stoppage caused by Ms. Harville’s failure to properly supervise her department. Ms. Harville was again warned that future infractions would result in further disciplinary action.
5. On February 18, 1997, ConAgra issued Ms. Harville a “Written Warning” concerning a February 14 complaint that she had shorted a customer to the extent of 109 cases of product. The letter complained that Ms. Har-ville had not informed anyone of the shortage until after the administration learned of the problem and further noted that this constituted the second such occurrence (citing the August 1996 event as the other). The letter stated the unacceptable nature of Ms. Harville’s performance and again warned of future disciplinary action.
6. On March 10, 1997, ConAgra issued Ms. Harville another “Final Written Warning.” The complaint on this occasion was that Ms. Harville had improperly granted personal leave to two employees. The letter asserted that neither leave was approved by a manager, that the appropriate documents were never turned into the personnel office and that the proper procedure was not followed when the individuals returned to work. The letter also refers to a conversation with Ms. Harville, wherein she asserted that she was unaware personal leave requests needed manager approval, despite having served as a supervisor for eight years. The letter ended with the following language:
IfiThis is another instance of a continuing history of very poor judge-ments made by you regarding your departments and flagrantly disregarding plant policies and procedures.
I expect these deficiencies in your supervisory skills to be corrected immediately. I pledge to you the help and assistance of myself and the rest of the plant management staff in accomplishing this task.
However, I want to be clearly understood that any further infractions will result in the termination of your employment with ConAgra Poultry Company. Your Signature below will indicate that you have read the letter and completely understand its content and the consequences that will follow should you fail to correct you [sic] performance.
Ms. Harville signed the letter on March 10,1997.
7.On March 12, 1997, ConAgra issued Ms. Harville another “Final Written Warning.” The complaint in this letter was that Ms. Harville had again shorted a customer, this time with twenty-one cases of product. As it had in the past, ConAgra pointed out to Ms. Harville that her conduct did not meet the company expectations of her as a supervisor and that further infractions would result in her termination from employment.
Ms. Harville’s signature appears on all but the August 6, 1996 correspondence, thus indicating her receipt of the correspondence and knowledge of the criticism and possible future disciplinary action.
Given the record before us, including the evidence presented on the instance giving rise to the dismissal and Ms. Har-ville’s work history, we can conclude only that the Board’s findings of fact were supported by sufficient evidence and that this evidence warrants the Board’s decision that Ms. Harville is not entitled to unem *47 ployment benefits as a matter of law. See ConAgra Broiler Co., 657 So.2d 391.
One might conclude that Ms. Harville’s conduct in July 1997, standing alone, consisted of little more than inadequate job performance or an error in judgment. |7However, five times in the previous year, she had been called to account for her inadequate job performance. On two of those five occasions, she was given final warnings concerning future performance. The Board found her action in July 1997, to be a wilful and wanton disregard of her employer’s interest and a deliberate violation of ConAgra’s rules. As such, her action constituted “misconduct” as defined in La.R.S. 23:1601(2)(a). The district court erred in concluding otherwise.
DISPOSITION
For the foregoing reasons, the judgment of the district court is reversed and the decision of the Louisiana Department of Labor, Office of Employment Security Board of Review is reinstated, rejecting Patricia Harville’s claim for unemployment compensation benefits. All costs are taxed against Patricia Harville.
REVERSED.
THIBODEAUX, J., dissents and assigns written reasons.