CARAWAY, J.
 

 | ¡.Samuel L. Bowden (“Bowden”) seeks reversal of the trial court’s judgment affirming the decisions of the Board of Review (“the Board”) and the Administrative Law Judge (“ALJ”) denying his claim for unemployment insurance compensation (“UI”) benefits. Finding ALJ error regarding the “misconduct” determination under La. R.S. 23:1601, we reverse.
 

 Facts
 

 Bowden worked for Flakeboard America Limited (“Flakeboard”) and its predecessor company from September 1972 until March 2008. In 2007, Bowden was in a position temporarily as a melamine operator, but was disqualified from this position on February 29, 2008.
 
 [1]
 
 He was then transferred back to his previous job as a part checker in the shipping department. Upon his disqualification, Bowden was asked not to return to | sthe melamine area. In response to his mandated intracompany transfer, Bowden filed an independent grievance claim.
 

 
 *515
 
 On March 17, 2008, Bowden was granted a request for an unpaid personal leave of absence from March 21 through April 21, 2008, in addition to four weeks’ vacation in order to attend truck driving school. Bow-den was to report back to work on May 20, 2008.
 

 On March 22, 2008, while he was on leave, Bowden was observed by a coworker on company property, sometime around midnight. He was seen taking pictures of the melamine line. The coworker informed management and several attempts were made to contact Bowden to pursue an investigation of the incident. Bowden failed to attend two meetings, wherein the grievance previously filed by Bowden and the March 22, 2008 incident were both scheduled to be addressed. Union representation was present and available at one of these meetings. On April 10, 2008, Bowden dropped’ out of truck driving school. He subsequently returned to Flakeboard for an April 22, 2008 grievance meeting, accompanied by his union representative. Bowden was questioned about his actions on March 22 at this meeting.
 

 On May 30, 2008, after 36 years of employment, Bowden was terminated from his position with Flakeboard. The original separation notice, dated May 30, 2008, explained that Bowden was discharged for a “violation |4of collective bargaining agreement.” An official notification letter was subsequently sent to Bowden, informing him that he was being fired for “insubordination and unauthorized activities at the LPB plant on March 22, 2008,” “uncooperative and disruptive behavior during the company’s efforts to investigate this incident” and “dishonesty during the investigation process.”
 

 Thereafter, Bowden filed for UI benefits. The Louisiana Department of Labor initially found no indication of misconduct connected with Bowden’s employment and he was not disqualified from receiving UI benefits. Flakeboard appealed the agency’s decision. “A Notice of Telephone Hearing” was mailed to Bowden, which set the hearing for August 13, 2008, and provided:
 

 IN DETERMINING ELIGIBILITY FOR UNEMPLOYMENT INSURANCE BENEFITS, THE ISSUE(S) BEFORE THE JUDGE IS (ARE) THE CORRECTNESS OF THE FOLLOWING:
 

 The claimant was discharged from employment due to violation of company agreement; or for insubordination. It will be decided if the discharge was for misconduct connected with the employment. R.S. 23:1601(2).
 

 Both Bowden and Flakeboard representatives participated in the August 13th hearing. Patricia Williams, regional human resources manager, represented Flakeboard and Rick Hummer, operations manager,, participated as a witness for the company. Prior to the hearing, Bowden requested, via | ¡¡letter, an in person hearing, as well as additional time to procure the presence of his union representative. This request was denied as untimely.
 
 [2]
 

 At the hearing, Flakeboard attempted to introduce evidence of a violation of corporate safety policy. In this regard, two documents were submitted purporting to establish a policy prohibiting visitors and off-shift workers from coming onto company property without permission from a supervisor. The first document was a safety committee meeting notice, dated June 13, 2005. The notice was posted on a
 
 *516
 
 company bulletin board and provided, under the heading “Old Business”:
 

 If on weekend or off shift employees need to have PPE on to go to training center. If employee comes in off shift they need to let the supervisor on shift know that are on the plant site in case of emergency.
 

 Flakeboard maintained that it effectively continued this policy when it acquired Louisiana Particle Board, the predecessor company, in 2006. The second document was part of a “new hire orientation” and furnished the rule that
 

 [O]ff-duty employees who are not scheduled to work but are “just visiting” may not leave the PPE storage area until they have been granted permission from the shift supervisor and have donned all required PPE.
 

 [¿The purpose of this rule for personnel on the premises was explained as a safety matter to account for each person at the plant in the event of an emergency.
 

 Flakeboard also complained that Bow-den’s actions violated a direct order to stay away from the melamine area upon his disqualification from the melamine position. As a final matter, Flakeboard expressed during the hearing that Bowden gave inconsistent answers to its questions during the investigation process. For example, Bowden originally stated that he did not take any pictures of the plant but later recanted and stated he took pictures but he no longer had them because he was storing them on his computer which crashed.
 

 The ALJ reversed the agency’s decision and in so doing, concluded:
 

 The testimony and evidence in this case indicates the claimant was terminated from his employment after he deliberately violated the employer’s rules concerning his presence on their property without notice or authorization. He was also taking unauthorized pictures of the plants equipment. It is concluded that his discharge was for misconduct connected with the employment.
 

 The ALJ’s decision was then affirmed by the Board, which fully adopted the findings of fact and conclusions of law of the ALJ. The decision was once again affirmed by the district court by judgment rendered March 19, 2009. From this judgment, Bowden appeals.
 

 17Discussion
 

 On appeal, Bowden argues that the trial court erred by finding that, as a matter of fact and law, he engaged in misconduct disqualifying him from UI benefits. He questions the existence and promulgation of any company policy regarding his presence as an employee on the premises at the time of the March 22 incident. He denies that he violated the directive given to him concerning his presence in the melamine area of the plant.
 

 The controlling provision of the unemployment compensation law is La. R.S. 23:1601 which provides, in pertinent part:
 

 An individual shall be disqualified for benefits:
 

 (2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
 

 Judicial review in unemployment proceedings is limited by La. R.S. 23:1634, which provides that “findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of
 
 *517
 
 fraud, shall be conclusive, and the jurisdiction of the court (on appeal) shall be confined to questions of law.”
 
 Lafitte v. Rutherford House,
 
 40,395 (La.App.2d Cir. 12/14/05), 917 So.2d 684,
 
 citing,
 
 La. R.S. 23:1634(B). The scope of judicial review by the court is limited to questions of law and the question of | swhether the decision is supported by “sufficient evidence.”
 
 Jackson v. Louisiana Bd. of Review,
 
 41,-862 (La.App.2d Cir.1/10/07), 948 So.2d 327;
 
 Delta American Healthcare, Inc. v. Burgess,
 
 41,108 (La.App.2d Cir.5/17/06), 930 So.2d 1108;
 
 Bowman v. State, Office of Employment Sec.,
 
 403 So.2d 825 (La.App. 2d Cir.1981). Judicial review does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts.
 
 Menyweather v. Office of Employment Security,
 
 43,170 (La.App.2d Cir.4/30/08), 981 So.2d 814.
 

 The employer bears the burden of proving that the discharge resulted from disqualifying conduct by a preponderance of the evidence.
 
 Banks v. Administrator, Dept. of Employment Sec. of the State of Louisiana,
 
 393 So.2d 696 (La.1981);
 
 Brinson v. Administrator, Div. of Employment Sec.,
 
 34,988 (La.App.2d Cir.8/22/01), 793 So.2d 552. A violation of an employer’s rule does not
 
 per se
 
 constitute misconduct sufficient to disqualify a claimant from receiving unemployment benefits. Whether a policy violation warrants withholding unemployment benefits is a question which must be determined not by examining the employer’s rule, but by statute.
 
 Lafitte v. Reliant Energy Resource Corp.,
 
 37,709 (La.App.2d Cir.10/17/03), 859 So.2d 233;
 
 Robinson v. Brown,
 
 129 So.2d 45 (La.App. 2d Cir.1961). A deliberate violation of a policy or rule adopted by the claimant’s employer to ensure orderly work conditions constitutes misconduct for purposes of the unemployment compensation statute, if the claimant was aware of the policy or rule.
 
 ConAgra Broiler Co. v. Gerace,
 
 95-41 (La.App. 3d Cir.5/31/95), 657 So.2d 391;
 
 Harville v. ConAgra Poultry Co.,
 
 99-773 (La.App. 3d Cir.11/24/99), 768 So.2d 42. Although a single policy violation might be sufficient misconduct to bar the receipt of benefits, an employee’s work history of prior instances of disregarding company rules is a relevant consideration in determining if benefits are due.
 
 Id.
 
 An employee’s failure to follow a direct order of his supervisor can constitute misconduct which would disqualify a claimant from receiving unemployment compensation benefits.
 
 Lafitte v. Rutherford House, supra; Giss v. Sumrall,
 
 409 So.2d 1227 (La.App. 2d Cir.1981).
 

 The unemployment statute must be liberally construed to serve its remedial purpose.
 
 Parker v. Gerace,
 
 354 So.2d 1022 (La.1978);
 
 Lafitte v. Reliant, supra.
 
 Thus, misconduct must be construed so as to favor the awarding of benefits rather than disqualification.
 
 Id.; Operators, Inc. v. Comeaux,
 
 579 So.2d 1228 (La.App. 3d Cir.1991).
 

 The key portion of the statutory definition for “misconduct” concerns Bowden’s alleged “violation of a policy or rule adopted to insure orderly |inwork or the safety of others.” La. R.S. 23:1601(2)(a). The ALJ made a fact determination that Bowden “deliberately- violated” both a company policy aimed at all employees and a particular rule or directive given to Bow-den to refrain from involving himself with the melamine area where he had formerly worked. The ALJ further determined that Bowden took an “unauthorized” picture of the.melamine area. Nevertheless, accepting that such conduct occurred, we find that the statutory measure poses the further test that the “policy” be in fact a
 
 *518
 
 policy properly promulgated to employees and that the purpose of the policy or rule concerns the “orderly work” of the employee and other employees or the “safety of others.”
 

 Concerning the policy for off-duty employees to identify their presence at the facility with a supervisor, we agree with Bowden’s argument that the employer’s evidence of its promulgation of a “policy” was very weak. Also, the policy itself which the prior corporate owner posted on a bulletin board was principally aimed at the safety of the off-duty employee for the understanding of the employee’s location in case of emergency. Overall, we find that this violation identified by the ALJ was clearly not shown as a deliberate act, and the statute’s test for a “policy” for the “safety of others” was not met. Thus, legal error occurred by the ALJ’s application of the statutory definition in the measure of this misconduct.
 

 J^jOn the other hand, the specific “rule” or directive given to Bowden prohibiting his activity in the melamine area of the plant had as its purpose the “orderly” conduct of work for the workers in that area. Nevertheless, Bowden’s testimony that he was permitted to access another area of the plant located in near proximity to the melamine area was only disputed by Flakeboard in terms of mere feet of the distance between the two work areas. Within that area, Bowden photographed the melamine line where he formerly worked at a time when he was involved in a grievance process over his dismissal of work on that line.
 

 Significantly, the ALJ’s ruling was not that Bowden was involved with others in a disruptive manner on the melamine line, but that he made an “unauthorized” photograph of the line. Whether the taking of photos within the plant was prohibited by policy or rule was not proven. Therefore, we do not find that this single event falls within the meaning of misconduct sufficient to cause the disqualification of UI benefits under the statute.
 

 Conclusion
 

 Having found error in the legal conclusions of the ALJ concerning the employee’s conduct, the administrative ruling is reversed. Costs are assessed to the employer, Flakeboard America Limited.
 

 1,.REVERSED.
 

 [1]
 

 . After installing two melamine lines in 2007, Flakeboard began an evaluation process, in conjunction with a bidding process, to determine qualified employees. Pursuant to these processes, it was determined that Bowden was not qualified for the position.
 

 [2]
 

 . The letter was not mailed until August 11. Requests for postponement must be received 72 hours prior to the hearing.