Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,198-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MATTHEW SIMS                                    Plaintiff-Appellant

versus

OFFICE OF EMPLOYMENT                            Defendants
SECURITY AND CITY OF
MONROE

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-2399

Honorable Robert C. Johnson, Judge

* * * * *

MATTHEW C. SIMS                                 In Proper Person

LOUISIANA DEPARTMENT                            Counsel for Appellees,
OF LABOR                                        Louisiana Workforce
By: Danelle L. Gilkes                           Commission (Office
                                                of Employment Security)

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

**PITMAN, C. J.**

Claimant-Appellant Matthew Sims appeals the district court's ruling in favor of Defendant-Appellee Louisiana Workforce Commission (the "LWC").[1] For the following reasons, we affirm.

## FACTS

Sims filed a claim for unemployment benefits after his separation from employment with the City of Monroe (the "City") on June 12, 2020, and began receiving benefits.

On February 19, 2021, the LWC notified Sims that it completed a review and investigation of his claim for unemployment benefits and determined that he was discharged because he was incarcerated. It stated that his separation did not meet Louisiana Employment Security Law requirements for receipt of benefits, meaning he did not qualify for unemployment benefits. The LWC also determined that Sims was overpaid $1,800 in Lost Wages Assistance Program benefits paid to him from July 26 through September 5, 2020; $6,175 in unemployment insurance benefits paid to him from June 7 to November 28, 2020; and $4,200 in Federal Pandemic Unemployment Compensation benefits paid to him from June 7 to July 25, 2020.

Sims appealed.

A hearing with an administrative law judge ("ALJ") was held on May 18, 2021. Tarya Bell, an assistant human resources director for the City, stated that Sims was hired on July 12, 2012, as a part-time employee of the City; became a full-time employee on May 15, 2013; and was a laborer for

_____

[1] Although the caption of this case names the Office of Employment Security and the City of Monroe as Defendants, the LWC is the Defendant-Appellee in this matter.

the Public Works Department. The last day he worked was June 5, 2020, and he was discharged from employment on June 12, 2020. Bell explained that he was discharged because he missed work three days in a row—Tuesday, May 26 through Thursday, May 28, 2020—and did not call in, which violated the City's employment policy that if an employee will miss work they must call in 30 minutes before their shift and if they do not report to work within three days they shall return with a doctor's note. She stated that Sims called in on the fourth day (May 29, 2020) and said he had COVID-19, not that he had been arrested. She noted that had he called in earlier than the fourth day, he would not have been discharged. Torrence Johnson, the City's drainage superintendent, testified that Sims called him on May 29, 2020, and stated that he was trying to get an extension from his doctor. He stated that Sims was discharged because he violated the attendance policy. Carnell Person, streets and drainage manager for the City, testified that he signed Sims's discharge letter and explained that he was discharged for being absent from work for three days without reporting to his supervisor or manager. Sims testified that he was arrested on May 24, released from jail on May 28 and had no way of contacting his employer to say he was not coming to work on May 26, 27 and 28. He did call his brother and a friend from jail but said he only had access to a phone on Sunday and Monday, which was a holiday, so there was no reason to call into work on those days. He also stated that he was wrongfully accused, had not been convicted and would prevail in court. Sims stated that paying back the overpayment would be a hardship and requested that the court waive the overpayment because he was not at fault in causing it.

2

On May 20, 2021, the ALJ affirmed the LWC's determination that Sims was discharged because he was incarcerated and that he was overpaid $1,800, $6,175 and $4,200 in unemployment benefits. It also denied a waiver of recovery of the overpayments.

Sims appealed to the Louisiana Board of Review (the "Board"). On July 22, 2021, the Board affirmed the ALJ's decision that Sims was paid benefits during a period of disqualification and that repayment of the overpaid benefits should not be waived.

Sims requested judicial review of the Board's decision.

On June 27, 2022, a hearing was held in district court. The court noted that the City terminated Sims's employment because he violated its policy by failing to call in when he missed three consecutive days of work. It emphasized that Sims could have called into work the day he was released from jail to explain why he had not reported for work and had he done that, he would not have violated the City's policy. It addressed Sims's argument that he was concerned about COVID-19 exposure while incarcerated and responded that Sims could have both contacted his employer and gone to the doctor on the day he was released from jail. It found that Sims's separation from employment was legally justified under the City's attendance policy; and, therefore, he was not entitled to any unemployment compensation. Regarding the ALJ's decision not to grant a waiver of repayment and the Board's upholding that decision, the district court noted that Sims was not at fault but considered whether he demonstrated an inability to pay. It found that Sims was employed and had income leftover after paying his bills and therefore demonstrated an ability to pay. It ordered him to pay $150 per month until the debt is retired.

On July 21, 2022, the district court filed a judgment affirming the Board's decision that Sims was disqualified from unemployment benefits, that he was overpaid and that repayment was not waived. It also ordered Sims to repay the overpaid amounts at $150 per month.

Sims appeals.

## DISCUSSION

In his first assignment of error, Sims argues that the district court erred in determining that the factual findings of the Board were supported by sufficient evidence. In his second assignment of error, he argues that the district court erred in affirming the Board's decision to disqualify him from unemployment benefits and requiring him to repay all overpayments. He contends that the decision to disqualify him was based on insufficient evidence and emphasizes the impact of the COVID-19 pandemic on his case. He states that he did the right thing by going to the doctor upon his release from jail and not endangering his coworkers with a deadly virus by immediately reporting to work. He contends that it is ridiculous to say that he engaged in misconduct when he was following COVID-19 health and safety guidelines.

The LWC argues that the district court correctly determined that the factual findings of the Board were supported by sufficient evidence and correctly affirmed the Board's decision to disqualify Sims from unemployment benefits and to require him to repay all overpaid amounts. It explains how Sims's actions and inactions violated the City's employment policy, which constituted misconduct. The LWC also details the Board's consideration of Sims's ability to repay the overpaid amounts and argues

4

that Sims failed to prove that he was entitled to a waiver or unable to repay the money owed.

La. R.S. 23:1601(2)(a) states in part that an individual shall be disqualified from unemployment benefits:

> If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.

The employer bears the burden of proving that a discharge resulted from disqualifying misconduct. *Banks v. Adm'r, Dep't of Emp. Sec. of State of La.*, 393 So. 2d 696 (La. 1981). The issue is primarily a factual one to be determined by the administrator and the board of review. *Id.*

A violation of an employer's policy does not *per se* constitute misconduct sufficient to disqualify a claimant from receiving unemployment benefits. *Lafitte v. Reliant Energy Res. Corp.*, 37,709 (La. App. 2 Cir. 10/17/03), 859 So. 2d 233. Whether a policy violation warrants withholding unemployment benefits is a question that must be determined not by examining the employer's rule, but by statute. *Id.* A deliberate violation of a policy adopted by the claimant's employer to ensure orderly work conditions constitutes misconduct for purposes of the unemployment compensation statute, if the claimant was aware of the policy or rule. *Bowden v. Louisiana Bd. of Rev., Off. of Regul. Servs.*, 46,048 (La. App. 2 Cir. 1/26/11), 57 So. 3d 513. An unexcused absence from work, and a failure to timely notify the employer, can be disqualifying misconduct if a wrongful intent is established. *Lafitte v. Rutherford House, Inc.*, 40,395 (La. App. 2 Cir. 12/14/05), 917 So. 2d 684.

La. R.S. 23:1713 addresses overpayment, repayment and waiver of repayment of unemployment benefits and states in part:

> A. If the administrator finds that an individual has received any payment under this Chapter to which the individual was not entitled, such individual shall be liable to repay such amount . . . .
>
> B. The issue of waiver of the right of recovery of any overpayment of benefits shall be heard upon any appeal of such determination or assessment of overpayment. The appeal referee, board of review, or any court of jurisdiction, may waive the right of recovery of any overpaid benefits received by any person who has received such benefits under this Chapter while any conditions for the receipt thereof were not fulfilled in his case, or while he was disqualified from receiving such benefits, when all of the following pertain:
>
> (1) The receipt of said benefits did not come within the fraud provisions of R.S. 23:1601(8).
>
> (2) The overpayment was without fault of the claimant. In determining whether the claimant was at fault, whether the claimant provided inaccurate information, failed to disclose a material fact, or knew or should have known that he was not entitled to benefits shall be considered, and any such act by the claimant shall preclude the granting of a waiver.
>
> (3) The recovery thereof would be against equity and good conscience. In determining whether the recovery of the overpayment would be against equity and good conscience, whether recovery would render the claimant unable to cover ordinary living expenses for six months, and whether the claimant was notified that a reversal on appeal would result in an overpayment of benefits shall be considered.

LAC 40:IV.369.A.1 sets forth requirements for the waiver of recovery of overpayments and states:

> A waiver of the overpayment may be granted only if:
> a. the claimant was without fault in causing the overpayment;
> b. repayment would be against equity and good conscience; and
> c. the claimant provided supporting documentation of his inability to pay in full or according to the repayment table in § 371.

Specific to the waiver of repayment of federal benefits, 15 U.S.C. § 9021(d)(4) states:

> In the case of individuals who have received amounts of pandemic unemployment assistance to which they were not entitled, the State shall require such individuals to repay the

amounts of such pandemic unemployment assistance to the State agency, except that the State agency may waive such repayment if it determines that-

(A) the payment of such pandemic unemployment assistance was without fault on the part of any such individual; and

(B) such repayment would be contrary to equity and good conscience.

Judicial review in unemployment proceedings is limited by La. R.S. 23:1634(B), which states that "the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Judicial review requires a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the board of review's decision. *Marchand v. Forster*, 37,222 (La. App. 2 Cir. 6/25/03), 850 So. 2d 941. Courts may not disturb the board of review's factual findings when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. *Id.*

In this case, the City's attendance policy required employees to call in 30 minutes before their shift began if they were going to be absent and to return to work with a doctor's note if they did not report to work for three consecutive days. Testimony before the ALJ showed that Sims violated this policy by failing to report to work or call in for three consecutive days and not calling in on the fourth day until after his shift began. Although Sims attempts to justify his actions with health concerns surrounding the COVID-19 pandemic, his focus is misplaced. The City's attendance policy did not require Sims to report to work—it only required him to call in and present a doctor's note. Had he called in before his fourth consecutive absence, he would not have violated the City's attendance policy and would not have been discharged from his employment.

The determination of the ALJ, Board and district court that Sims's failure to report to work or call in when he was absent for three consecutive days was misconduct and resulted in his discharge was supported by sufficient evidence and was conclusive. As a matter of law, the facts of this case justified Sims's disqualification from unemployment benefits. It was within the ALJ's discretion to waive the repayment of the overpaid benefits, and the ALJ did not abuse her discretion in deciding not to waive repayment.

Accordingly, these assignments of error lack merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in favor of Defendant-Appellee Louisiana Workforce Commission and against Claimant-Appellant Matthew Sims. Pursuant to La. R.S. 23:1692, costs of this appeal are not assessed.

**AFFIRMED.**